[No. G032371. Fourth Dist., Div. Three. June 9, 2006.]

R & B AUTO CENTER, INC., Plaintiff and Appellant, v.
FARMERS GROUP, INC., et al., Defendants and Respondents.

328

COUNSEL

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe and Paula M. Harrelson for Plaintiff and Appellant.

Picker, Chow & Freisleben, Alan J. Freisleben and Todd A. Picker for Defendants and Respondents Farmers Group, Inc., and Truck Underwriters Association.

Horvitz & Levy, Lisa Perrochet, Jason R. Litt; Hollins Schechter and Eric N. Riezman for Defendant and Respondent Truck Insurance Exchange.

OPINION

**MOORE, J.**—One might reasonably assume new car dealerships and used car dealerships are apples and oranges. But when a lemon is added to the mix, the lines can become blurred. When the Department of Motor Vehicles (DMV) classifies a used vehicle with a "title brand," a purchaser of that used vehicle may sometimes bring suit under the lemon law, a procedure usually associated with defective new cars. (See the Song-Beverly Consumer Warranty Act, Civ. Code, § 1790 et seq.) Here, a car dealership licensed to sell only used cars sent out a bid for lemon law insurance, including coverage for liability arising in connection with the sale of "title branded" lemon law buyback vehicles. (See Civ. Code, §§ 1793.23, 1793.24.) It was furnished a policy containing lemon law coverage. To its chagrin, when sued under the lemon law, the dealership discovered the coverage only applied to the sale of new vehicles. The insurance carrier would not agree to either defend or indemnify the dealership in connection with the lemon law suit.

The dealership sued the insurance carrier and related parties on negligent and intentional misrepresentation, breach of contract, reformation, bad faith, breach of fiduciary duty and unfair competition theories. The unfair competition cause of action sought injunctive relief to halt the purportedly deliberate marketing and sale of lemon law coverage to used car dealerships without the disclosure that the coverage being sold to them was inapplicable to their used car operations. Through a series of rulings on dozens of motions in limine and two motions for nonsuit, the trial court largely gutted the dealership's case. The dealership appeals from a judgment in favor of the insurance carrier and related parties.

The trial court made numerous erroneous rulings that essentially deprived the dealership of an opportunity to put on its case. Although the court properly disposed of the causes of action for breach of contract, bad faith and breach of fiduciary duty, it improperly tossed out the causes of action for negligent and intentional misrepresentation, reformation and unfair competition. We reverse and remand.

In so doing, we caution against the wholesale disposition of a case through rulings on motions in limine. (See *Fatica v. Superior Court* (2002) 99 Cal.App.4th 350 [120 Cal.Rptr.2d 904].) No matter how logical a moving party's motion may sound, a judge generally should not be weighing the evidence on a motion in limine. A judge is in the ticklish situation of needing to be efficient, on the one hand, while needing, on the other hand, to give the parties their day in court and let the jury weigh the evidence. While it may be tempting to look at a case in the macro sense, the devil is in the details. The moving party's concerns that the other party may be trying to use evidence for an improper purpose or in a way that may be unduly prejudicial can be addressed by limiting instructions, without taking away the other party's hallowed right to a jury trial. (See *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395 [107 Cal.Rptr.2d 270].)

We also express dismay that a court, having eliminated the bulk of a party's evidence through rulings on motions in limine, would then grant motions for nonsuit before a party had the opportunity to make an opening statement or present evidence to the trier of fact.

I

FACTS

In 1997, used car dealership R & B Auto Center, Inc. (R & B), was looking for insurance for its business operations. It prepared a bid request in which it itemized the coverage it sought, including products deficiency liability coverage, i.e., coverage for losses suffered on account of the lemon laws. R & B specifically requested that the products deficiency liability coverage include coverage for liability arising in connection with "title branded" lemon law buyback vehicles. Civil Code section 1793.23 requires that the ownership certificate for a vehicle reacquired under the lemon law be "title branded" with the inscription "Lemon Law Buyback" and that a purchaser of the vehicle be notified that it is a lemon law buyback. Civil Code section 1793.24 specifies the form of the notice that must be provided.

William Westenberger, an insurance agent for the Farmers Insurance Group of Companies including Truck Insurance Exchange, and Farmers

representative Beth Lopez,[1] each advised R & B that Farmers sold an automotive dealers package that included a products deficiency liability endorsement providing lemon law coverage. Westenberger and Lopez discussed the scope of the available lemon law coverage with Otto Joe Dersch, R & B's business manager. At his deposition, Dersch stated that in a discussion with Westenberger on the requested products deficiency liability coverage, he and Westenberger addressed the significance of R & B's request that the policy provide coverage for "title branding." Dersch explained to Westenberger that the term applies to "titles branded by [the] DMV with lemon law buy back, true miles unknown, salvage title." According to Dersch, Westenberger, after having researched whether the automotive dealers package would provide coverage for used car sales, later confirmed that it did. Dersch further stated that Lopez confirmed that the package would provide products deficiency coverage, including branded title coverage, for R & B's business.

At his deposition, Dersch further stated that R & B is licensed by the DMV to sell used vehicles only and that during a discussion on the completion of the insurance application, he specifically stated that R & B sold used cars. Indeed, in a transcript of Westenberger's recorded statement, offered by R & B in opposition to a motion for summary judgment, Westenberger plainly acknowledged that at the time he sold R & B the policy, he was aware that R & B was a used car dealership. At his deposition, Dersch also said that he specifically discussed with Lopez the fact that R & B was a used car dealership. Dersch further indicated that after he disclosed that R & B was a used car dealership, Westenberger and Lopez each assured him that the package would include lemon law coverage for R & B's business. In his declaration, Dersch also said that R & B relied on those representations in purchasing an insurance policy from Farmers.[2] Bob Delozier, president of

---

[1] To be precise, Westenberger explained in his May 16, 2002 declaration that he was "a captive agent of the Farmers Insurance Group of Companies." He further explained: "Members of the Farmers Insurance Group of Companies for which I have been an agent since 1982 include Farmers Insurance Group, Truck Insurance Exchange, Mid Century Insurance Company, Farmers Insurance Exchange and Fire Insurance Exchange." Westenberger also stated that he had told R & B that he was a Farmers agent and that he was offering a Farmers insurance program. In addition, he said: "At all times when transacting the sale of the Policy to R & B Auto, I was acting in the course and scope of my duties as a Farmers agent and as an agent of Truck Insurance Exchange . . . ." At deposition, Westenberger described Lopez as a "commercial sales representative" for "Farmers," and at trial, he testified that she was a field underwriter for Farmers Group, Inc. We observe that both the witnesses and the litigants sometimes fail to articulate to which of the various "Farmers" entities they intend to refer and to describe the interrelationship between the various entities. We will be as precise as the record allows in identifying the particular "Farmers" entity at issue in each context.

[2] In his May 30, 2002 declaration, Dersch stated: "5. In at least a handful of conversations with Bill Westenberger, he expressly advised me that R & B would be covered under the 'Products Deficiency Liability coverage' . . . . [¶] 6. The Products Deficiency Liability

R & B, made essentially the same statement in his declaration.[3] The policy R & B purchased was actually issued by Truck Insurance Exchange (Truck Insurance), and the face page of that policy recites that R & B is engaged in the business of "used auto sales." (Capitalization omitted.)

On August 30, 1999, John and Renee Peralta, who had purchased a lemon law buyback vehicle from R & B, sued R & B for violation of the lemon law (the Song-Beverly Consumer Warranty Act, Civ. Code, § 1790 et seq.).[4] On July 31, 2000, R & B tendered the defense of the litigation to Truck Insurance and requested indemnity, but Truck Insurance did not agree to provide either a defense or indemnity. According to R & B, it paid $17,500 to settle the Peralta litigation and paid an additional $49,163.61 in attorney fees in connection with that litigation.

On February 6, 2001, R & B filed a lawsuit against Farmers Group, Inc. (FGI), Truck Underwriters Association (Truck Underwriters) and Truck Insurance. R & B asserted causes of action for breach of contract, tortious breach of contract, negligent misrepresentation, intentional misrepresentation, breach of fiduciary duty, violation of Business and Professions Code section 17200, and reformation. On April 3, 2002, Truck Insurance tendered to R & B checks totaling $77,275.98. Truck Insurance stated that the amount was equal to $21,437.90 in defense fees and costs and $55,838.08 with respect to the settlement of claims for damages and attorney fees. It also

---

coverage was important to R & B. . . . I . . . emphasized the importance of the coverage to Mr. Westenberger, who, in response to my emphasis, requested that I speak with an expert at Farmer[s], Ms. Beth Lopez. I spoke with Ms. Lopez. . . . Ms. Lopez expressly confirmed that R & B would be covered under the Products Deficiency Liability Endorsement, consistent with our bid request. [¶] 7. I advised Mr. DeLozier of the assurances of both Mr. Westenberger and Ms. Lopez. In making the decision to purchase insurance from Farmers, I personally relied, and know from my personal knowledge that Mr. DeLozier also relied, on the assurance that we were obtaining coverage for R & B under the Products Deficiency Liability Endorsement."

[3] Delozier, in his May 30, 2002 declaration, stated: "5. In electing to purchase insurance from Farmers at the time, I specifically relied upon the fact that William Westenberger and Beth Lopez had both assured R & B, through Joe Dersch, that we would have Products Deficiency coverage under the Products Deficiency Liability Endorsement. [¶] 6. After the *Peralta v. R & B* lawsuit developed, and after we had tendered our defense of that lawsuit to Farmers, I spoke with Mr. Westenberger. Mr. Westenberger assured me on more than one occasion that he acknowledged that he had assured us that we were covered under the Products Deficiency Liability Endorsement. . . . He further stated that he personally felt Farmers Insurance should provide R & B coverage for the *Peralta* lawsuit due to his representations, and those of Farmers' underwriter, Beth Lopez, that R & B was covered under the Products Deficiency Liability Endorsement."

[4] The Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) applies to "cars sold with a balance remaining on the manufacturer's new motor vehicle warranty . . . ." (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 123 [41 Cal.Rptr.2d 295].) The record does not indicate whether the vehicle in question had a remaining balance on the warranty when the Peraltas purchased it.

stated that the amount included interest at the rate of 10 percent. R & B declined to accept the tender.

After ruling on dozens of motions in limine, the trial court dismissed the causes of action for breach of contract, tortious breach of contract and violation of Business and Professions Code section 17200. The court held a bench trial on issues of alter ego and breach of fiduciary duty and ruled against R & B. Before R & B had made an opening statement or had presented any evidence to the trier of fact in the contemplated jury trial on the remaining causes of action, the court granted two motions for nonsuit—one in favor of FGI and Truck Underwriters and another in favor of Truck Insurance. The court entered judgment in favor of FGI, Truck Insurance and Truck Underwriters and R & B appeals.

II

DISCUSSION

A. *Introduction:*

R & B raises many assertions of error. The gist of its grievance, however, is simply that the insurance agents represented that the policy being sold to R & B would provide it with lemon law coverage. When a lemon law claim later arose against R & B and R & B found out that the plain language of the policy only provided lemon law coverage for new car sales, not the used car sales in which R & B engaged, R & B was aggrieved by the lack of promised coverage. R & B raises many theories as to why defendants should be held liable and how the court erred, and in so doing cites numerous authorities. However, it cites one case nearly on point as to the underlying nature of the matter before us—*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442 [92 Cal.Rptr.2d 521] (*Butcher*). That case provides us with the initial framework for our analysis.

In *Butcher, supra,* 77 Cal.App.4th 1442, a prospective insured was looking to replace a policy that provided coverage for malicious prosecution. He provided an agent of Truck Insurance Exchange with a copy of his existing policy and asked the agent to procure the same coverage, but with higher limits. (*Id.* at p. 1447.) According to the insured, the agent represented to him that he had obtained a Truck Insurance Exchange policy that provided the same coverage. The insured purchased the policy, but did not read it. (*Id.* at p. 1448.) When he was later sued for malicious prosecution, the insured learned that the policy was not the same as his prior coverage and did not provide coverage for malicious prosecution claims.

The insured filed a lawsuit against both Truck Insurance Exchange and the agent. (*Butcher, supra,* 77 Cal.App.4th at p. 1449.) The trial court granted summary judgment in favor of both defendants. (*Id.* at p. 1450.) The appellate court reversed, stating that there was a triable issue of material fact with respect to the causes of action for reformation and negligent misrepresentation, among others. (*Id.* at p. 1465.) It also noted that since the insured "[had] not contended on appeal that the form of the Truck [Insurance Exchange] policy, as delivered, provide[d] malicious prosecution coverage, [the] breach of contract cause of action [had] been waived." (*Id.* at p. 1467, fn. 21.)

██ As the *Butcher* court stated, "[a]n insurance agent has an 'obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.' [Citation.] The law is well established in California that an agent's failure to deliver the agreed-upon coverage may constitute actionable negligence and the proximate cause of an injury. [Citations.]" (*Butcher, supra,* 77 Cal.App.4th at p. 1461.) Moreover, the insurer may be held vicariously liable for the negligence of the agent. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1118, 1120 [55 Cal.Rptr.2d 276].) Applying these principles, the *Butcher* court held that "if the facts relating to the purchase of the Truck [Insurance Exchange] policy are shown to be as related by [the insured], the trier of fact could find the [insured was] misled by [the agent's] negligent failure to warn that [the coverage sought] was not among the coverages of the policy." (*Butcher, supra,* 77 Cal.App.4th at p. 1463.) Hence, the court concluded that the insured should have had his opportunity to put on his case with respect to the negligent misrepresentation and reformation causes of action. (*Id.* at p. 1465.)

Applying the foregoing principles to the case before us, it is clear that the facts as characterized by R & B would support causes of action for both misrepresentation and reformation. However, inasmuch as R & B has not argued that the language of the policy as issued provided lemon law coverage for used car sales, the breach of contract cause of action fails as a matter of law, as the trial court held.

B. *Misrepresentation Causes of Action:*

 (1) *Preliminary issues*

We start by addressing a few preliminary matters. The first is whether, as a procedural matter, R & B waived the right to challenge the nonsuit in favor of FGI and Truck Underwriters on the misrepresentation causes of action. The second is whether the nonsuits must be affirmed because R & B failed to present any evidence in opposition to them. The third is whether R & B waived the right to argue the negligent misrepresentation cause of action as to

any party, because of a purported admission that all possible damages with respect to that cause of action had been tendered already. We address these issues one by one.

(a) *Stipulation to nonsuit*

The record contains a copy of a minute order stating: "Counsel for plaintiff and defendant Truck Underwriters Association and Farmers Group, Inc. entered into a stipulation with counsel for plaintiff dismissing their clients from the action." The record does not contain copies of any written stipulation or any formal order providing more complete information on the point. Read in isolation, the minute order might make it appear that R & B ought not to be able to challenge the nonsuit in favor of FGI and Truck Underwriters, having consented to the same. However, the reporter's transcript provides background information crucial to the understanding of the nature of the stipulation and the order.

On March 20, 2003, when jury selection was in progress, the parties asked the court for an opportunity to discuss a possible stipulation, outside of the presence of the jury. Then, counsel for R & B took quite a bit of time checking with the court to make certain he understood the court's rulings to date. He recited that the breach of fiduciary duty, breach of contract, bad faith and alter ego claims had been tossed out and that the court had ruled that the reformation claim would be prospective only. Counsel for R & B stated his understanding that Truck Insurance, FGI and Truck Underwriters were going to make additional motions in limine to further limit the evidence that R & B could present with respect to remaining matters. He further said that if the court granted the motion of FGI and Truck Underwriters, they would consider themselves to be essentially out of the case. Counsel for R & B explained R & B's reluctant offer for a qualified stipulation under the circumstances, by stating, "[a]nd so if that motion was made and granted, and we would want to preserve on the record that we oppose all motions—we're not throwing in the towel, we're opposing—but, our view of the situation, your Honor, is that the court's view of the law and the defense counsels' view of the law is substantially different than ours. We have lost on major issues. [¶] And we see—the court used the word that our case was 'gutted.' Before, I said, we still had all our vital organs. I think we're coming close to having vital organs going down, your Honor."

After a recess, counsel for FGI and Truck Underwriters stated, "Your Honor, I would move for a nonsuit in favor of my clients. I've prepared an order which, with one exception and that's a notable one, is in a form that's acceptable with the plaintiff." Counsel for R & B stated: "Your Honor, we oppose the motion. But as I indicated on the record this morning earlier, your

Honor, in light of the court's rulings, it is clear that the plaintiff's view of the law and that of the defendants is very, very different. It is clear from several of the court's rulings that as far as the material rulings from our standpoint goes, the court is more inclined to accept the defendants' view of the law than our view of the law. So in light of that, we are prepared to—we oppose this motion. We agree to the form of the order in form only. We preserve all objections. We say that everything that we've offered and argued to your Honor . . . in the past, we think we're right on the issues that we've been ruled wrong on, but we understand that. And in the interest of judicial economy, we're prepared to sign off on this order as a matter of form, preserving all rights to object." Counsel for R & B reiterated that "reserving the right to make any argument on that agreement that might arise, we would sign off on this order as to form." The court then granted the motion.

Although the record reflects that R & B entered into a stipulation, the exact nature and scope of the stipulation are unclear. We cannot ascertain from the record whether there was a written stipulation or a formal order precisely describing the nature and scope of the agreement. The record does make clear, however, that R & B felt boxed in by the trial court's adverse rulings and was willing to agree to the form of an order for nonsuit, while reserving its right to argue substantive error. Considering the arguments made to the trial court, we do not conclude that R & B waived its right to challenge the nonsuit in favor of FGI and Truck Underwriters on substantive grounds. If there was a written stipulation or a formal order to the effect that R & B did waive this right, FGI and Truck Underwriters may present the same to the trial court on remand.

(b) *Failure to present evidence*

As to any suggestion that R & B waived its right to challenge either of the two nonsuits for failure to present evidence, we caution that the procedural posture of the litigation must be borne heavily in mind. A look at that procedural posture is most revealing.

By the time the motions for nonsuit were brought, most of R & B's evidence had been eliminated through motions in limine and its causes of action for breach of contract, bad faith and unfair competition had been dismissed. A bench trial was held on the fiduciary duty and alter ego issues and the court ruled against R & B. At that point, only the causes of action for intentional and negligent misrepresentation and reformation remained. Jury selection was commenced with respect to the trial of those causes of action. The issue of a possible stipulation with FGI and Truck Underwriters about a nonsuit under reservation of rights came up while the jury selection was in process. There was a lengthy discussion on the record, the highlights of

which are described *ante*. The long and the short of it is that R & B felt that, through the many rulings against it, its case had been gutted, so it was reluctantly willing to stipulate to an order for nonsuit as to FGI and Truck Underwriters, in form only, on the express reservation of its right to argue all the points previously raised.

Shortly thereafter, the same afternoon, the court granted Truck Insurance's motion to exclude evidence of claims handling and Truck Insurance thereafter made an oral motion for nonsuit. Truck Insurance brought its motion for nonsuit before R & B ever made an opening statement or presented any evidence to the jury. R & B opposed the motion, on the basis of all arguments it had previously made, and the court granted the motion.

Is R & B now precluded from challenging the orders granting nonsuit because of its failure to file an offer of proof at the time the motions for nonsuit were made? To so conclude would be to ignore the procedural posture of this case and to compound the errors already made when the trial court serially entered orders thwarting any realistic possibility that R & B may have had to prove its case.

■ Code of Civil Procedure section 581c, subdivision (a) permits a defendant to move for nonsuit after the plaintiff has completed its opening statement, or presented its evidence in a jury trial. In a typical case, after a motion for nonsuit is brought, the plaintiff is well advised to move to reopen his or her case in order to present additional evidence in an effort to cure the purported defect. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2005) ¶ 12:233, p. 12-45 (rev. # 1, 2001).) A failure to request a chance to reopen waives the right to do so. (*Id.* at ¶ 12:235, p. 12-45.) Any motion to reopen must be accompanied by an offer of proof. (*Id.* at ¶ 12:235.1, p. 12-46.) The offer of proof must specify the additional evidence to be offered. (*Id.* at ¶ 12:236, p. 12-46.)

Here, we disagree with any suggestion that R & B was required to move to "reopen" the case to present "additional" evidence, accompanied by an offer of proof. For one thing, R & B never even had an opportunity to make an opening statement, let alone present any evidence to the jury.[5] It would make no logical sense to require R & B to request an opportunity to "reopen" to

---

[5] Code of Civil Procedure section 581c, subdivision (a) provides: "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant . . . may move for a judgment of nonsuit." Oddly enough, the parties nearly ignore the issue of the propriety of the motions for nonsuit under this statutory provision, given the procedural context. R & B makes note of the issue only in its reply brief. Although it is an interesting point, the other parties have not had an opportunity to address it, inasmuch as it was raised for the first time in R & B's reply brief.

present "additional" evidence, when it had never opened to begin with or presented any evidence to the jury at all. Moreover, it certainly would have made no sense to require a motion to "reopen," together with an offer of proof, in the context of the nonsuit in favor of FGI and Truck Underwriters, since R & B had stipulated to the order for nonsuit, albeit reluctantly, under a reservation of rights, and as to form only. And, it would have been fruitless for R & B to move to "reopen" with respect to Truck Insurance's motion for nonsuit, inasmuch as the court had already addressed R & B's proffered evidence and excluded the bulk of it through rulings on motions in limine. R & B had nowhere left to go, so it simply said that it reiterated and preserved all its prior arguments. That means that it reiterated and preserved its arguments on the exclusion of evidence.

R & B had managed to get evidence of misrepresentation before the court along the way, in opposition to summary judgment, for example, even though it did not remind the court of every item of evidence when it opposed the nonsuit motions. It had also addressed, in opposition to the various motions in limine, evidence it hoped to be able to present. However, by the time the motions for nonsuit were made, it appeared as though R & B was beating its head against a brick wall in trying to get the court to consider its evidence and there was a point at which R & B realized that resistance was futile. The fact that R & B had been beaten at every turn and finally resorted to simply preserving all prior arguments does not mean that its opposition to the motions for nonsuit should be deemed inadequate as a matter of law or that the motions for nonsuit should be deemed unopposed because of the failure to remind the trial court of every piece of evidence previously put before it[6] and every piece of evidence that had been eliminated from presentation through rulings on motions in limine.

---

Therefore, we also do not address the argument. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108 [115 Cal.Rptr.2d 285]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770].)

[6] It is certainly the general rule that this court cannot consider evidence that was not put before the trial court. (See, e.g., *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491].) However, this is not an instance in which the evidence we consider was never proffered to the trial court in any context. It is simply the case that R & B did not take the time to remind the court of each of those individual items of evidence at the time it opposed the motions for nonsuit, considering that the court had largely gutted its case through rulings on motions in limine, and R & B saw little basis for proceeding without reversals of those rulings. Under the peculiar circumstances of this case, we see no reason, in assessing the parties' arguments on appeal, to ignore the evidence that had been raised in the trial court proceedings and is contained in the appellate record.

#### (c) *Admission of lack of damages*

R & B, in an offer of proof filed in response to oral rulings on certain motions in limine, stated: "Approximately 611 days after R & B's initial tender of defense, Farmers unilaterally 'tendered' to R & B two checks totaling $77,274.98. The amount represented 100% of the defense costs and settlement amount incurred by R & B, with 10% interest, in connection with the underlying *Peralta* matter. [T.E. 28 and 29] Farmers' letter indicated that it was based upon 'discussions with former Commercial Team Leader, Henry Kilinski.' " The referenced trial exhibit No. 28 is a letter to R & B's counsel from Truck Insurance, albeit on Farmers letterhead, stating: "Enclosed are two checks which together total $77,275.98 (with interest calculated at the rate of 10%), which includes $21,437.90 in defense fees and costs and $55,838.08 to settle the claims for damages and attorney fees."

The quoted language from the offer of proof can be read to mean simply that R & B intended to describe the objective of Truck Insurance as expressed in its tender letter. On the other hand, it can also be read to mean that R & B admitted that the amounts enclosed in the tender letter did in actuality cover the settlement amount, plus defense costs and interest, and further, that there were no other conceivable damages available under the negligent misrepresentation cause of action. The latter interpretation is supported by the following additional language from the offer of proof: "When Farmers eventually sent the check on April 3, 2002, it did so completely of its own accord. . . . The amount sent did not purport to be a 'compromised' amount, but rather was the full amount of R & B's initial claim, with interest."

At the same time, the offer of proof also states: "R & B's claim for coverage remained an open 'claims file' at Farmers throughout the period from the time this lawsuit was filed until Farmers issued the $77,000 in checks, over a year later, in purported discharge of its coverage obligations." The use of the word "purported" indicates that R & B may have intended to leave room for argument that the amounts tendered did not in fact represent all possible damages. R & B also couched another of its pleadings in similarly ambiguous language. In its trial brief, R & B said, "Farmers unilaterally tendered a check to R&B for in excess of $77,000 purporting to pay for the defense and indemnity it had long disavowed." Again, this language could be viewed as casting doubt on whether the amount tendered did indeed meet the coverage obligation.

The language of the offer of proof engendered argument at the trial level. After the offer of proof was filed, FGI and Truck Underwriters filed a motion for judgment on the pleadings. A February 14, 2003 minute order described the motion by stating: "Moving party contends that the evidence in the offer

of proof . . . establishes that it has paid the defense costs and the settlement amount, with interest, in the underlying Peralta action. Moving party thus contends that responding party can't show damages on causes of action 3-5." In response to the motion, R & B filed an opposition in which it stated, inter alia: "The statement set forth in the Offer of proof hardly qualifies as an admission that plaintiff has been offered all of the damages it could possibly prove against [Truck Underwriters] and FGI." The trial court agreed with this contention, further stating in the minute order: "Responding party correctly argues, the statement in the offer of proof doesn't conclusively establish that these are the entire damages suffered by responding party." As is evident, R & B maintained at the trial level that its offer of proof was not intended to constitute an admission that all conceivable damages with respect to the negligent misrepresentation cause of action had been tendered, and the trial court agreed with this assertion. We, too, do not view the language of the offer of proof as being an unambiguous admission on R & B's part that all damages conceivably available under the negligent misrepresentation cause of action had indeed been tendered already.

We observe that R & B, in its opening brief on appeal, reiterates verbatim the above quoted language from the offer of proof, and, in doing so, provides a citation to the offer of proof. The quoted language, as repeated in the opening brief, continues to reference the trial exhibit wherein Truck Insurance explained the nature of the tender. The ambiguity in the quoted language does not disappear just because the language is restated in R & B's opening brief.

We also note that R & B states in its opening brief that "Truck [Insurance] moved for a non-suit on the grounds the pleadings established that Truck [Insurance] had tendered damages which equaled the damages on the *Peralta* matter, the attorneys fees paid to Peralta's lawyers and to R&B's lawyers on the *Peralta* matter and 10 percent interest to date of the tender. R.T. v. 4 p. 769; 20-770:9." This language suffers from the same ambiguity as the other language, which was first stated in the offer of proof and then repeated in the opening brief. Did R & B merely mean to describe the grounds Truck Insurance argued, or did R & B mean to concede that all possible damages had in fact been tendered already? The citation to the reporter's transcript may be key: It is a citation to the argument of Truck Insurance. This is an indication that R & B only meant to describe Truck Insurance's activities and arguments, not to make a concession.

Erring on the side of caution, and with the goal of giving the litigants a full and fair trial on the merits, we remand the negligent misrepresentation issues to the trial court for further proceedings to the extent that R & B has not conceded that all potential damages under the negligent misrepresentation cause of action have been tendered.

## (2) *Substantive issues*

R & B states that it put out a bid request for coverage, including a requirement that the policy provide lemon law coverage for its used car sales operation. It also asserts that Westenberger and Lopez each represented that the automotive dealers package included lemon law coverage applicable to R & B's business. R & B further maintains that while Westenberger indicated that he was not especially familiar with the details of the policy, he referred R & B to Lopez to confirm the coverage points. According to R & B, it thereafter had contact with Lopez, who confirmed that the policy would provide lemon law coverage for R & B's business. The parties agree that the policy actually delivered provided lemon law coverage for new car sales only. Assuming this characterization of the facts is accurate, the insurance delivered clearly was not the insurance requested by R & B or promised by Westenberger and Lopez. In this way, the case before us is on all fours with *Butcher, supra,* 77 Cal.App.4th 1442. That is to say, a jury could potentially find that Westenberger and Lopez were the agents of FGI and/or Truck Insurance and that they made misrepresentations to R & B for which FGI and/or Truck Insurance should be held liable. (*Butcher, supra,* 77 Cal.App.4th at pp. 1461, 1465.)

"The most definitive characteristic of an insurance agent is his authority to bind his principal, the insurer . . . ." (*Marsh & McLennan of Cal., Inc. v. City of Los Angeles* (1976) 62 Cal.App.3d 108, 117 [132 Cal.Rptr. 796].) "[T]he general rule is that '. . . in the absence of notice, actual or constructive, to the insured of any limitations upon such agent's authority, a general agent may bind the company by any acts, agreements or representations that are within the ordinary scope and limits of the insurance business entrusted to him, although they are in violation of private instructions or restrictions upon his authority.' [Citation.]" (*Troost v. Estate of DeBoer* (1984) 155 Cal.App.3d 289, 298 [202 Cal.Rptr. 47].) Indeed, "[a]n insurer, as a principal, may be vicariously liable for the torts of its agent if the insurer directed or authorized the agent to perform the tortious acts, or if it ratifies acts it did not originally authorize. [Citation.]" (*Desai v. Farmers Ins. Exchange, supra,* 47 Cal.App.4th at pp. 1118–1119.) Furthermore, an insurer "may be held vicariously liable for failing to fulfill its basic obligation to provide the insurance required by the policy's intended beneficiary and demanded from the agent. [Citation.]" (*Id.* at p. 1120.)

Despite the fact that the court had before it evidence concerning the agency status of both Westenberger and Lopez, and the purported misrepresentations made by each of them, the court granted two motions for nonsuit as to the misrepresentation causes of action. It granted the first motion in favor of FGI and Truck Underwriters and the second motion in favor of Truck Insurance.

We address these two motions in turn.[7] In doing so, we bear in mind that " 'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] "In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff'[s] favor.' " [Citation.] A mere "scintilla of evidence" does not create a conflict for the jury's resolution; "there must be *substantial evidence* to create the necessary conflict." [Citation.]' [Citations.]" (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 262–263 [80 Cal.Rptr.2d 196].)

### (a) *FGI/Truck Underwriters motion*

The judgment recites that the court granted the motion for nonsuit brought by FGI and Truck Underwriters in light of the court's findings that neither FGI nor Truck Underwriters owed R & B a fiduciary duty under a subscription agreement and that FGI was not the alter ego of Truck Underwriters. We will discuss these findings in greater detail later in this opinion. However, at this point, suffice it to say that we do not see the relevance of these findings with respect to the misrepresentation causes of action. The fact that the subscription agreement did not give rise to certain fiduciary duties and the fact that FGI was not found to be the alter ego of Truck Underwriters have no bearing on whether either of those entities made misrepresentations to R & B.

The cause of action in question, misrepresentation, simply is not predicated on the existence of a fiduciary duty under the subscription agreement. Furthermore, inasmuch as evidence was presented showing that Lopez was a "Farmers" commercial sales representative or a field underwriter for FGI, and Westenberger was an agent for the Farmers Insurance Group of Companies, there is a conceivable basis for holding FGI liable for misrepresentation irrespective of whether it is the alter ego of Truck Underwriters. Whether Lopez and Westenberger were agents of FGI, for whose representations FGI should be held liable, is a question of fact for the jury to determine. (*Troost v. Estate of DeBoer, supra,* 155 Cal.App.3d at p. 299.) We cannot say, with

---

[7] In its opening brief on appeal, R & B states that "[t]he Trial Court committed prejudicial error when it granted a nonsuit on the causes of action for Intentional Misrepresentation and Negligent Misrepresentation." As indicated *ante*, the court actually granted two separate motions for nonsuit. With respect to the disposition of the misrepresentation causes of action, R & B is not clear as to whether it intends to challenge the orders granting each of the two motions for nonsuit or only the order granting one of them. We will assume that R & B intends its arguments on misrepresentation to apply equally to the misrepresentation causes of action it pled against each of FGI, Truck Underwriters and Truck Insurance.

respect to FGI, that the evidence was insufficient, as a matter of law, to hold FGI liable for the purported misrepresentations of Westenberger and Lopez. The court erred in granting nonsuit in favor of FGI as to the misrepresentation causes of action.

The ruling in favor of Truck Underwriters is another matter. R & B does not state why Truck Underwriters should be liable on account of representations made by Westenberger and Lopez. In fact, it cites no evidence at all that would permit a jury to find that Truck Underwriters made any misrepresentation to R & B. The court did not err in granting nonsuit in favor of Truck Underwriters as to the misrepresentation causes of action.

### (b) *Truck Insurance motion*

We turn now to the motion of Truck Insurance. As R & B readily admits, Truck Insurance tendered two checks totaling $77,275.98 to R & B more than a year and a half after R & B had tendered the defense of the Peralta litigation to Truck Insurance and more than a year after R & B had filed suit against Truck Insurance. At the time of tender, Truck Insurance said that the total amount of the checks represented the amount R & B had paid to the Peraltas to settle their suit, plus the amount of attorney fees and costs R & B had incurred in defending itself in the Peralta suit, together with 10 percent interest. In moving for nonsuit, Truck Insurance said it had already tendered payment in full for all damages that were available to R & B on a negligent misrepresentation cause of action and thus there was no viable negligent misrepresentation cause of action to be tried.[8]

Truck Insurance reiterates this argument on appeal, while R & B maintains the trial court, due to erroneous evidentiary rulings, failed to consider what actual damages R & B had incurred. Truck Insurance cites no portion of the record to show that R & B conceded that the amount tendered represented the full amount of damages that could possibly be recovered under the negligent misrepresentation cause of action. The order granting Truck Insurance's motion for nonsuit as to the negligent misrepresentation cause of action is reversed.

Next, we turn to the intentional misrepresentation cause of action. Truck Insurance, pointing to two statements contained in R & B's trial brief,

---

[8] On March 20, 2003, after the jury had been selected, Truck Insurance made its motion for nonsuit. A minute order entered on that date states that the motion of Truck Insurance was based on R & B's "earlier motion regarding fiduciary duty and alter ego." This would appear to be an erroneous statement, however. The Truck Underwriters and FGI motion may have been based on the findings concerning fiduciary duty and alter ego, but those findings had nothing to do with Truck Insurance. The reporter's transcript of the March 20, 2003 proceedings indicates that the Truck Insurance motion was based to a significant extent on the Truck Insurance tender of payment to R & B.

contends that R & B has conceded that there was no intentional misrepresentation. As we shall show, this is an overly narrow construction of R & B's statements.

■ In the introduction to the trial brief, R & B stated, with respect to Westenberger and Lopez, "The Farmers' agents were apparently unaware, as was R & B, that the fine print of the policy limited 'lemon law' coverage to the sale of 'new motor vehicles.' " (Boldface omitted.) Under its topic heading on reformation, R & B also said, "both Farmers (through its agents Lopez and Westenberger) and R & B proceeded in the mutually mistaken belief that R & B was receiving 'Lemon Law' coverage under the Products Deficiency Liability Endorsement, notwithstanding the fact that it was never a seller of 'new motor vehicles.' " While one could argue that these statements constituted an admission that the two insurance agents acted only negligently, and there were no intentional misrepresentations made, one must consider these statements in their argumentative context. Litigants frequently plead in the alternative, coloring assertions of fact to support one cause of action or another. (See *Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 29 [223 Cal.Rptr. 806].) Here, the assertion that there was a mutual mistake was intended to support the reformation cause of action, but this does not preclude R & B from making an effort to characterize the facts of the case, in the alternative, as supporting intentional misrepresentation.

Furthermore, other language in the trial brief indicates that R & B did not intend to make any concession that there was no intentional misrepresentation. Under its bait and switch topic heading, R & B stated: "Farmers[, i.e., Truck Insurance, Truck Underwriters and FGI collectively,] intentionally misrepresented the terms of the policy when Farmers agents failed to disclose to R & B the new vehicle limitation on coverage and provided R & B with the false and deceptive marketing brochure which also failed to disclose this limitation." Under the intentional misrepresentation topic heading, R & B stated: "The evidence will show that Farmers created the Automotive Dealers package knowing that there was no coverage for used cars but never distinguished it in its brochures or advised its agent Westenberger. FGI employee Lopez affirmatively misrepresented the terms. The evidence will show that Farmers extensively marketed the policy to used car dealers—Mom and Pop organizations . . . . The evidence will show intentional misrepresentation of the worst kind: bait and switch." Clearly, R & B did not intend to concede there was no intentional misrepresentation.

On appeal, Truck Insurance refers to Westenberger as its agent and concedes that the evidence, viewed in the light most favorable to R & B, reflects that Westenberger offered to sell R & B an automotive dealers package. Truck Insurance also concedes that the marketing brochure for the

package, a copy of which is contained in the record as a trial exhibit, represented that the package included product deficiency liability (i.e., lemon law) coverage. R & B wanted to link this evidence together with evidence of Truck Insurance's marketing of the automotive dealers package to other used car dealerships, but it did not have that opportunity.

R & B stated in opposition to the motion for nonsuit that it believed it could prove intentional misrepresentation were it not for the fact that the court, in granting various motions in limine, had excluded R & B's evidence on the point. More specifically, it stated that it could show that Westenberger's conduct in connection with the sales of the automotive dealers package to other used car dealerships demonstrated fraud.[9] As we explain in greater detail *post*, the court erred when it granted Truck Insurance's motion in limine No. 14, thereby excluding the testimony of several used car dealers, at least two of whom purportedly were prepared to testify that they had received express representations that the policies sold to them would provide lemon law coverage for their used car dealerships. On remand, R & B will have an opportunity to present that evidence. The order granting Truck Insurance's motion for nonsuit as to the intentional misrepresentation cause of action is reversed.

## C. *Reformation:*

When the court granted Truck Insurance's motion for nonsuit, it disposed of not only the misrepresentation causes of action, but also the reformation cause of action. The judgment does not articulate the court's rationale with respect to the disposition of the reformation cause of action. However, the reporter's transcript of the proceedings at which the court ruled shows that the focus of the argument was on the misrepresentation causes of action and the fact that Truck Insurance had already tendered payment of $77,275.98. The court appeared to buy into the argument that there were no damages left to collect and therefore nothing left to say. The court expressed no separate or distinct rationale for granting nonsuit as to the reformation cause of action.

Whether the court made its ruling based on the $77,275.98 tender or otherwise, it erred in granting nonsuit as to the reformation cause of action. For one thing, the full measure of damages that may be available under a cause of action for breach of a reformed insurance contract has not been shown. For another, there has been no finding on the issue of whether the predicate elements of a cause of action for reformation have been met. (See

---

[9] We see no reason why *Templeton Feed & Grain v. Ralston Purina Co.* (1968) 69 Cal.2d 461 [72 Cal.Rptr. 344, 446 P.2d 152], cited by Truck Insurance, would preclude an award of punitive damages with respect to the intentional misrepresentation cause of action.

Civ. Code, § 3399;[10] *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524–525 [117 Cal.Rptr.2d 220, 41 P.3d 46]; *Butcher, supra,* 77 Cal.App.4th 1442, 1465.) Based on the information contained in the record, we cannot say that the evidence was insufficient as a matter of law to support a finding in favor of R & B on a reformation cause of action.

## D. *Breach of Contract:*

### (1) *Waiver*

As mentioned previously, the court in *Butcher, supra,* 77 Cal.App.4th 1442, stated that the appellant insured therein had waived its right to argue the breach of contract cause of action, because the insured had not asserted that the insurer breached the terms of the insurance contract as written. (*Id.* at p. 1467, fn. 21.) In the case before us, R & B acknowledges that the insurance contract as written provides lemon law coverage for new car sales only. Since R & B makes no argument that Truck Insurance breached its obligation to provide lemon law coverage for new car sales, it has waived its right to argue that the insurance contract as written was breached.[11]

### (2) *Procedural issues*

This notwithstanding, R & B claims that it was denied due process when the court ruled that Truck Insurance had not breached the insurance contract as a matter of law. This is a curious assertion given the procedural posture of the case. Truck Insurance filed its motion in limine No. 1 in which it requested the court to bifurcate the issue of coverage from the other issues and to rule on the issue of coverage as a matter of law. In addition, R & B, in its own motion in limine No. 1, specifically asserted that the question of whether the insurer had a duty to defend and indemnify was a matter of law and requested that the court rule on the issue of coverage before submitting the remainder of the case to the jury. Of course, R & B sought a different outcome than did Truck Insurance. Truck Insurance sought a ruling as a matter of law that the Peralta litigation was not covered, based on clear policy language, whereas R & B sought a ruling as a matter of law that there was a duty to defend and indemnify, based not on policy language but on waiver.

The bottom line is that both parties requested the court to make a ruling as a matter of law, and the court did so. It ruled that R & B's claim was not

---

[10] Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . . ."

[11] This is not to say that R & B is precluded from seeking damages with respect to the breach of a reformed insurance contract, should R & B prevail on a reformation theory on remand.

covered under the insurance policy as a matter of law, and it was correct in so ruling. R & B has never asserted that its policy provides lemon law coverage applicable to used car sales and has never claimed that Truck Insurance breached the terms of the insurance contract as issued. The insurance policy provided no coverage, and no potential for coverage, so it was clear there was no duty to either defend or indemnify and the breach of contract cause of action was not viable. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19, 37 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548, 559 [7 Cal.Rptr.3d 844].)

Once it ruled that R & B's claim was not covered under the insurance policy as a matter of law, the court dismissed the cause of action for breach of contract. R & B complains that the court erred in dismissing the cause of action sua sponte. However, as we shall show, to the extent that the court may have made a procedural error either in issuing a coverage ruling in response to a motion in limine or in dismissing the breach of contract cause of action, it was invited error.

■ R & B clearly requested the coverage ruling, not only in its motion in limine, but in extensive oral argument as well. At a hearing on the motion, R & B argued that the evidence was undisputed and that the parties agreed that the matter they had put before the court was a legal issue. Truck Insurance argued that R & B's motion was an improper motion for summary judgment and the court itself repeatedly asked R & B whether it would have been more appropriate to raise the matter as a motion for summary adjudication. At the hearing, the court also asked what it was supposed to do after it made a coverage determination. The parties made their respective arguments as to which, if any, causes of action would then be eliminated. Although we discourage the use of motions in limine to achieve summary adjudication, given the procedural posture of the case, any error in granting relief based on R & B's motion in limine was invited error. "When a party by his conduct induces the commission of an error, he is estopped from asserting it as a ground for reversal. [Citation.]" (*Kardly v. State Farm Mut. Auto. Ins. Co.* (1995) 31 Cal.App.4th 1746, 1750 [37 Cal.Rptr.2d 612].)

Furthermore, "[a] judgment may not be reversed on appeal . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. [Citation.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].) Inasmuch as the court correctly ruled that there was no

coverage as a matter of law, a more favorable result would not have been reached had the court awaited the filing of a separate motion before dismissing the breach of contract cause of action. Consequently, we do not see how the court's dismissal order resulted in a miscarriage of justice.

### (3) *Other relief*

The fact that the breach of contract cause of action was dismissed does not mean, of course, that R & B is without a remedy. R & B claims to be aggrieved because the insurance agents misrepresented coverage and the coverage that was delivered did not conform to the agreement of the parties. Based on *Butcher, supra,* 77 Cal.App.4th 1442, it is clear that R & B's claims sound in misrepresentation and reformation. As we have already stated, R & B may seek relief under those theories.

### E. *Motion for Leave to Amend to Allege Waiver and Estoppel:*

R & B did not identify either waiver or estoppel as a basis of a cause of action in its third amended complaint. This notwithstanding, R & B says that Truck Insurance, Truck Underwriters and FGI have waived any defenses to their obligation to provide coverage and should be estopped from denying coverage. Shortly before trial, Truck Insurance filed its motion in limine No. 4, in which it requested a court order precluding R & B from either alleging waiver or estoppel or introducing evidence thereof. In its opposition to the motion, R & B requested leave to further amend its complaint to add allegations of waiver and estoppel.

Truck Insurance also filed its motion in limine No. 7, in which it sought a court order binding R & B to the parameters of its pleadings and prohibiting R & B from introducing evidence outside the parameters of its third amended complaint. The court granted motion in limine No. 4 and motion in limine No. 7. R & B then filed a motion for leave to file a fourth amended complaint in which the breach of contract cause of action would be predicated on a waiver of the right to deny coverage and an estoppel to deny coverage. The court denied the motion.

R & B asserts the trial court abused its discretion in denying R & B's motions for leave to further amend its third amended complaint to include allegations of waiver and estoppel. It contends that the evidence shows Truck Insurance, Truck Underwriters and FGI deliberately chose not to deny either the duty to defend or the duty to indemnify, leaving the coverage determination up in the air, despite a regulatory requirement that the insurer either defend or deny coverage. (See Cal. Code Regs., tit. 10, § 2695.7, subd. (b); see also Ins. Code, § 790.03, subd. (h).) This, R & B concludes, demonstrates

that Truck Insurance, Truck Underwriters and FGI waived the right to deny coverage, or should be estopped to deny coverage. R & B also says that the ultimate tender of the $77,275.98 is also ground for waiver or estoppel. Finally, R & B asserts that Truck Insurance, Truck Underwriters and FGI should be estopped to deny coverage because R & B relied to its detriment on the representations of Westenberger and Lopez that the policy provided lemon law coverage for used car sales.

In support of its waiver and estoppel arguments, R & B cites *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1151 [50 Cal.Rptr.2d 178].) *Chase* had to do with an instance in which the plaintiff insured asserted that the defendant insurer had forfeited the right to invoke the policy's arbitration clause. (*Id.* at p. 1148.) The appellate court acknowledged that an insurer could lose a contractual right under certain circumstances and remanded the matter to the trial court for a determination of whether the insurer had indeed forfeited the right to invoke the arbitration clause on the facts of the case. (*Id.* at pp. 1151, 1158, 1162.) The case before us, however, does not involve the forfeiture of a contractual right under the policy. Rather, it involves the use of the theories of waiver and estoppel to create coverage where none otherwise exists—that is, to create an otherwise nonexistent written contract providing lemon law coverage for used car sales, in order to use the newly created contract as the basis for a claim of breach. The distinction is key.

█ " ' " 'The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom . . . .' " ' [Citation.]" (*Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1303 [33 Cal.Rptr.2d 771].) We cannot see how the court abused its discretion in denying a motion that would have permitted R & B to amend to include allegations upon which R & B cannot prevail as a matter of law. We will affirm the ruling of the trial court if it is correct on any ground (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 110 [115 Cal.Rptr.2d 285]) and so uphold the ruling in this case.

F. *Breach of the Covenant of Good Faith and Fair Dealing:*

█ Truck Insurance, in its motion in limine No. 1, argued that if the court found there was no coverage as a matter of law, then R & B would be unable to succeed on its bad faith cause of action. In support of its position, Truck Insurance cited *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th 1. In that case, the Supreme Court stated: "It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair

dealing because the covenant is based on the contractual relationship between the insured and the insurer. [Citation.]" (*Id.* at p. 36.)

After the trial court in the matter before us granted Truck Insurance's motion, it dismissed the cause of action for tortious breach of contract. It was correct in so doing. The policy clearly provides no lemon law coverage for used car sales and Truck Insurance cannot be held to have breached the implied covenant of good faith and fair dealing with respect to the insurance contract as written, because there was no potential for coverage thereunder. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 36.)

 To the extent that R & B attempts to characterize its bad faith claim as pertaining to statutory bad faith, i.e., acts such as those Insurance Code section 790.03 defines as unfair or deceptive, the dismissal of the cause of action remains proper. As the Supreme Court stated in *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th 1, Insurance Code "section 790.03 confers no private right of action for damages. [Citations.]" (*Id.* at p. 35.) When an insurance company engages in activities proscribed by that section, the conduct may be addressed by the Insurance Commissioner, who may impose administrative sanctions against the company. (*Id.* at p. 36.)

Although two cases, i.e., *Neufeld v. Balboa Ins. Co.* (2000) 84 Cal.App.4th 759 [101 Cal.Rptr.2d 151], and *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260 [84 Cal.Rptr.2d 552], have held that an estoppel may be applied against an insurance company that violates the provisions of Insurance Code section 790 et seq. or the regulations promulgated thereunder, those cases are distinguishable from the one before us because in each of them there was a potential for coverage under the respective policy. However, when there is no potential for coverage, a cause of action for bad faith in the investigation and processing of a claim will not lie. (*San Diego Housing Com. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526, 544–545 [80 Cal.Rptr.2d 393].) That being the case, the trial court in this matter did not err in dismissing the bad faith cause of action to the extent it may be based on a violation of Insurance Code section 790 et seq. or the regulations promulgated thereunder.

That is not quite the end of our inquiry, however. R & B attempts to piggyback a bad faith cause of action on top of its reformation cause of action. That is to say, R & B argues that an insurance contract can be reformed to provide not only retroactive insurance coverage, but also a retroactive basis for a bad faith claim. As R & B sees it, even though there was no potential for coverage at the time Truck Insurance processed the lemon law claim, Truck Insurance nonetheless should be held liable for bad

faith if in the future the insurance contract is reformed to provide lemon law coverage for used car sales. Truck Insurance disagrees. Neither party cites a case on point.

■ However, we observe that "before an insurer can be found to have acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably* or *without proper cause.* [Citations.]" (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 347 [108 Cal.Rptr.2d 776].) Generally speaking, "the reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made . . . . [Citation.]" (*Ibid.*; accord, *Flippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1441 [88 Cal.Rptr.2d 881].) When an insured submits a claim to an insurer and there is no potential for coverage of that claim under the policy, the insurer has no duty to defend and it may reasonably deny the claim. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 36.) Since it is reasonable to deny the claim at the time, if the policy is later reformed to provide retroactive coverage, the insurer may not be held liable for bad faith for failing to have the foresight to know that the policy would be reformed.[12]

In the case before us, R & B submitted a lemon law claim with respect to a used car sale when the policy clearly provided lemon law coverage with respect to new car sales only. At the time Truck Insurance evaluated the claim, it was reasonable to deny it. If, on remand, the court should reform the policy to provide lemon law coverage for used car sales, this does not mean that Truck Insurance will be deemed to have acted in bad faith retroactively. The court did not err in dismissing the bad faith cause of action.

G. *Violation of Business and Professions Code section 17200:*

 (1) *Effect of coverage ruling*

In its third amended complaint, R & B asserted a cause of action for violation of Business and Professions Code section 17200.[13] R & B stated

---

[12] As this court has previously made clear, we disagree with any suggestion that court opinions rendered after an insurer has made its coverage decision can never be considered in determining whether the insurer acted in bad faith. (*Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 976 [135 Cal.Rptr.2d 718].) However, it would be inequitable to use a judgment of reformation to provide a retroactive basis for a bad faith claim in the particular context before us.

[13] Business and Professions Code section 17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Business and Professions Code section 17203, as amended by Proposition 64, provides:

FGI, Truck Insurance, and Truck Underwriters "have engaged in unfair and unlawful business practices by selling insurance policies in which the policy coverage states that it applies to new cars, to car dealerships engaged solely in the business of selling used cars. Based on [the insurance companies'] representations, the dealerships believed that they were covered by the aforementioned [policies]. Plaintiff is informed and believes, and thereon alleges that [the insurance companies] sold these policies with the intent of subsequently denying coverage to the used car dealers on the basis that the policies only applied to new cars." R & B sought to enjoin the insurance companies from continuing the allegedly unlawful practice. It also requested that the insurance companies be required to disgorge their wrongfully obtained profits and that R & B be awarded attorney fees pursuant to Code of Civil Procedure section 1021.5.

Curiously, the court disposed of the unfair competition cause of action when ruling on the first motions in limine filed by each of Truck Insurance and R & B, those seeking a ruling as to the existence of coverage as a matter of law. At the hearing on the motions in limine, the court asked Truck Insurance how many of the seven causes of action would be eliminated if the court determined as a matter of law that there was no coverage. Truck Insurance responded that such a ruling would eliminate the breach of contract, bad faith, and unfair competition causes of action.

Truck Insurance says that, at the hearing on the motions in limine, "R & B never suggested its unfair competition [argument] was independent of its coverage arguments." This implies that R & B was throwing in the towel on the unfair competition argument in the event the court ruled against it on the coverage argument. However, this is not the case. At the hearing, R & B stated, "even if one [were] to . . . reach the conclusion that the naked provisions of the policy alone [did] not provide coverage, it [would not] dispose of any issues in this case." In other words, R & B did not concede that the unfair competition cause of action was insupportable in the event of an adverse ruling on coverage.

After the trial court ruled on the motions in limine and held that there was no coverage as a matter of law, it also dismissed the three causes of action

"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . . ."

suggested by Truck Insurance—those for breach of contract, bad faith and unfair competition. We cannot see why a ruling that the insurance contract provided no coverage for the Peralta litigation claim should translate into a ruling that R & B cannot state a cause of action seeking to enjoin unfair business practices. Whether the insurance contract provided for lemon law coverage for used car sales was a question of law that the court readily answered by reviewing that contract. But the fact that the insurance contract limited lemon law coverage to new car sales hardly proves that Truck Insurance does not engage in unfair business practices in the sale of its new car lemon law coverage to used car dealerships. The court erred in disposing of the unfair business practices cause of action just because it held that the insurance contract did not provide coverage for the Peralta litigation.

### (2) Evidence/Truck Insurance's motion in limine No. 14

Truck Insurance contends that the court nonetheless ruled properly in dismissing the unfair competition cause of action, because R & B offered no evidence that the business practices complained of were continuing at the time of trial. However, R & B was not permitted to present its evidence of unfair business practices, due to an adverse ruling on Truck Insurance's motion in limine No. 14.

R & B states that it was prepared to offer the testimony of three witnesses, Messrs. Fena, Rusich, and Sweet, that would have supported the cause of action. Indeed, at the hearing on Truck Insurance's motion in limine No. 14, R & B asserted that the three individuals were used car dealers each of whom purportedly had been sold the same inapplicable lemon law coverage as had been sold to R & B. R & B further asserted that at least two of the three were prepared to testify that they had received express representations that the policies would provide lemon law coverage for their used car dealerships.

However, in its motion in limine No. 14, Truck Insurance sought the exclusion of the testimony of witnesses who had not been identified during the discovery process. The parties agree that Fena, Rusich and Sweet were not identified during the discovery process. The motion in limine cited *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270 [105 Cal.Rptr. 276], in support of its request. In *Thoren*, the court stated: "One of the principal purposes of civil discovery is to do away with 'the sporting theory of litigation—namely, surprise at the trial.' [Citation.] The purpose is accomplished by giving 'greater assistance to the parties in ascertaining the truth and in checking and preventing perjury,' and by providing 'an effective means of detecting and exposing false, fraudulent and sham claims and defenses.' [Citation.] Where the party served with an interrogatory asking the names of witnesses to an occurrence then known to him deprives his adversary of that

information by a willfully false response, he subjects the adversary to unfair surprise at trial." (*Id.* at p. 274.) The court also stated: "An order which bars the testimony of a witness whose name was deliberately excluded in an answer to an interrogatory seeking the names of witnesses protects the interrogating party from the oppression otherwise flowing from the answer." (*Ibid.*)

In opposition to the motion in limine, R & B stated that it did not discover the three witnesses in question until after the discovery cutoff date.[14] In other words, there was no deliberate concealment of the identity of the witnesses, as was the case in *Thoren v. Johnston & Washer, supra,* 29 Cal.App.3d 270. Because of this distinction, R & B argued the testimony of the witnesses should not be excluded.

Despite R & B's arguments, the court granted Truck Insurance's motion in limine No. 14. This was error. "*Thoren* [*v. Johnston & Washer, supra,* 29 Cal.App.3d 270 . . . does not stand for the proposition that evidence may be excluded based on the mere failure to supplement or amend an interrogatory answer that was truthful when originally served."[15] (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1325 [22 Cal.Rptr.3d 282].) The court abused its discretion in excluding the testimony of these three witnesses, and

---

[14] Although we do not see a declaration supporting the statement that the witnesses were not discovered until after the discovery cutoff date, Truck Insurance does not raise an issue as to the lack of evidentiary support for the statement. Consequently, we see no reason to concern ourselves with the matter at this juncture. This is particularly true considering that "[a]ttorneys are 'member[s] of an ancient, honorable and deservingly honored profession.' [Citation.] We call them 'officers of the court.' [Citation.] Let's practice what we preach and treat them with the respect they have earned. As we recently stated in *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 834 [115 Cal.Rptr.2d 847], 'the court should start with the presumption that, unless proven otherwise, lawyers will behave in an ethical manner.' " (*Frazier v. Superior Court* (2002) 97 Cal.App.4th 23, 36 [118 Cal.Rptr.2d 129].) For the purposes of this appeal, we presume that R & B can provide evidentiary support for its statement. If the matter becomes an issue on remand, the court may require the submission of such evidentiary support before making its ultimate ruling on the issue.

[15] *Thoren v. Johnston & Washer, supra,* 29 Cal.App.3d 270, the case the parties argued before the trial court, relied in part on former Code of Civil Procedure section 2034, subdivision (d) (Stats. 1968, ch. 188, § 3, pp. 477–479, as amended, repealed by Stats. 1986, ch. 1334, § 1, p. 4700). (*Thoren v. Johnston & Washer, supra,* 29 Cal.App.3d at p. 274.) That subdivision provided that " '. . . if a party . . . willfully fails to serve and file answers to interrogatories submitted under Section 2030 of this code, . . . the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose such other penalties of a lesser nature as the court may deem just. . . .' " (*Thoren v. Johnston & Washer, supra,* 29 Cal.App.3d at p. 274.) Former Code of Civil Procedure section 2023, subdivision (b)(3), in effect when Truck Insurance filed its motion in limine No. 14 in 2002, provided: "The court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence." (Repealed by Stats. 2004, ch. 182, § 22; see now Code Civ. Proc., § 2023.030, subd. (c) [evidence

thus excluding nearly all of the evidence that would have shown the alleged pattern and practice underlying the unfair competition claim. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432 [77 Cal.Rptr.2d 574].) The trial court erred in granting Truck Insurance's motion in limine No. 14.

### (3) *Related motions in limine*

In its opening discussion on the motion in limine rulings affecting its ability to pursue its unfair competition cause of action, R & B mentions not only Truck Insurance's motion in limine No. 14, but also Truck Insurance's motions in limine Nos. 3 and 18, as well as FGI and Truck Underwriter's motions in limine Nos. 4 and 8. Truck Insurance, in its motion in limine No. 3, requested the exclusion of documents not previously produced during discovery. In its motion in limine No. 18, Truck Insurance requested the preclusion of evidence or argument concerning the existence of any prior or subsequent lawsuits or claims against it. In their motion in limine No. 4, FGI and Truck Underwriters requested the exclusion of evidence of claims made by third parties. In their motion in limine No. 8, FGI and Truck Underwriters sought the exclusion of any evidence pertaining to R & B's unfair competition claim. The court granted each motion.

R & B construes the orders on these four motions in limine as precluding the testimony of Fena, Rusich and Sweet, as well as excluding other evidence relevant to the establishment of its unfair competition cause of action.[16] Certainly, the granting of the motion in limine No. 8 of FGI and Truck Underwriters did just that. That one order alone served to exclude *all* evidence pertaining to the cause of action. The other orders may potentially have had the same effect.

 "Under the record presented, we conclude the trial court's grant of the motions *in limine* was tantamount to a nonsuit [as to the unfair competition cause of action]. We are bound by the same rules as the trial court. Therefore, on this appeal we must view the evidence most favorably to appellant[], resolving all presumptions, inferences and doubts in [its] favor, and uphold the judgment for respondents only if it was required as a matter of law. [Citations.]" (*Edwards v. Centex Real Estate Corp.* (1997) 53

---

sanction for misuse of discovery process].) We do not see how a failure to disclose the names of witnesses who were unknown to R & B before the discovery cutoff date could constitute a misuse of the discovery process.

[16] R & B also states that the evidence was relevant to its bad faith and fiduciary duty causes of action. As we conclude elsewhere herein, those causes of action were properly dismissed, so we do not concern ourselves with whether the orders on the motions in limine were erroneous vis-à-vis those causes of action.

Cal.App.4th 15, 28 [61 Cal.Rptr.2d 518].) If the witnesses in question were to testify that they were used car dealers who had purchased the same or a similar automotive dealers package as had R & B, based on the representation that the lemon law coverage contained therein applied to used car sales, a trier of fact potentially could find that Truck Insurance engaged in unfair business practices. "A pattern of misleading oral representations, made by the defendant's agents, may qualify as an unfair business practice. [Citation.]" (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 965 [93 Cal.Rptr.2d 413].) We cannot say that, resolving all presumptions, inferences and doubts in favor of R & B, judgment against R & B on the unfair competition cause of action was required as a matter of law.

■ The trial court erred in causing the wholesale disposition of the unfair competition cause of action through the granting of the aforementioned motions in limine without tailoring its ruling to balance the competing concerns of the moving parties against the right of R & B to present evidence to establish its cause of action. Inasmuch as we have held that the court erred in dismissing the unfair competition cause of action, the evidence supporting that cause of action remains an issue in this matter. On remand, the court shall reconsider each of the four aforementioned motions in limine in light of the fact that the cause of action was erroneously dismissed. Truck Insurance, FGI and Truck Underwriters do not argue for a different result. Of the three, only Truck Insurance addresses the motions in limine at all, stating simply that if this court concludes that the trial court erred in dismissing the various causes of action, the trial court will have to revisit its evidentiary rulings on remand. Truck Insurance is correct on this point.

(4) *Effect of Proposition 64*

We have one more issue to address with respect to the unfair competition cause of action. While this appeal was pending, the electorate approved Proposition 64. The proposition became effective the day after its approval by the electorate. (Cal. Const., art. II, § 10, subd. (a).) The proposition contains certain amendments to Business and Professions Code sections 17203 and 17204 concerning the standing to bring an unfair competition action seeking injunctive or restitutionary relief and the requirement to comply with Code of Civil Procedure section 382 when bringing an unfair competition claim on behalf of others.

We invited the parties to file supplemental briefs on the retroactivity of Proposition 64 and the effect of any retroactive application on the case before us. The parties all agreed that the proposition is retroactive, citing this court's opinion in *Benson v. Kwikset Corp.* (2005) 126 Cal.App.4th 887 [24 Cal.Rptr.3d 683], review granted April 27, 2005, S132443. The Supreme

Court granted review of *Benson*, and several other cases addressing the retroactivity of Proposition 64, after the filing of the supplemental letter briefs in the matter before us.

 Pending a Supreme Court decision on the question of retroactivity, the trial court is directed to apply the Proposition 64 statutory amendments to this case. "Although the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' [Citation.]" (*Governing Board v. Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1].) " 'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.' [Citation.]" (*Ibid.*)

In order to proceed with its unfair competition cause of action, then, R & B will need to demonstrate that it can satisfy the requirements of Business and Professions Code sections 17203 and 17204 as amended by Proposition 64. In other words, it must show that it "has suffered injury in fact and has lost money or property as a result of [the alleged] unfair competition" (Bus. & Prof. Code, § 17204, as amended)[17] and, in order to press the cause of action on behalf of the general public, R & B will need to comply with Code of Civil Procedure section 382 (Bus. & Prof. Code, § 17203, as amended).

Truck Insurance says that R & B lacks standing, under Business and Professions Code section 17204, to maintain the unfair competition cause of action because it has not alleged that it has "lost money or property as a result of unfair . . . competition." With this assertion, we certainly disagree. R & B alleges that it paid premiums for illusory coverage and it had to make payment on a lemon law claim that it would not have had to pay had the Truck Insurance policy said what it was represented to say. This is an allegation of loss caused by the purported misrepresentations concerning the scope of coverage. The standing requirement is met.

 Next, Truck Insurance emphasizes that R & B cannot seek injunctive relief on behalf of the general public unless it meets the requirements of Code of Civil Procedure section 382, with reference to class actions. "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a

---

[17] Business and Professions Code section 17204, as amended by Proposition 64, provides in pertinent part: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney . . . or by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."

common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].) Truck Insurance states that R & B may only seek class action injunctive relief if it can demonstrate compliance with these requirements. However, Truck Insurance does not assert that R & B cannot do so.

R & B contends that it can meet the class certification requirements and points us to its offer of proof with respect to the anticipated testimony of Fena, Rusich and Sweet. R & B requests that this court remand the matter so that it will have an opportunity to show that it can satisfy the requirements of Code of Civil Procedure section 382. It is only fair to grant this request, since at the time R & B filed its third amended complaint it was not required to comply with Code of Civil Procedure section 382.

## H. *Breach of Fiduciary Duty and Alter Ego:*

### (1) *Introduction*

In its third amended complaint, R & B alleged that Truck Underwriters and FGI, as attorneys-in-fact, owed a fiduciary duty to R & B as a subscriber under a subscription agreement. R & B alleged that Truck Underwriters and FGI had breached their fiduciary duties to obtain coverage consistent with its express instructions and the express representations of Westenberger and Lopez, and to provide prompt and competent claims investigation, processing and settlement. It also alleged that Truck Insurance, Truck Underwriters and FGI were all alter egos of each other.

After it had dismissed the causes of action for breach of contract, breach of the duty of good faith and fair dealing, and violation of Business and Professions Code section 17200, the court conducted a bench trial on the breach of fiduciary duty and alter ego issues. It held that neither Truck Underwriters nor FGI owed R & B a fiduciary duty pursuant to a subscription agreement and that FGI was not the alter ego of Truck Underwriters. Judgment was thereafter entered in favor of Truck Underwriters and FGI.

On appeal, R & B argues: (1) the court erred in finding that Truck Underwriters did not owe a fiduciary duty to R & B; (2) the court erred in

failing to find that FGI was a "de facto attorney-in-fact" owing a fiduciary duty to R & B; and (3) the court's finding that FGI is not the alter ego of Truck Underwriters is not supported by substantial evidence. We address these issues in turn.

### (2) Background

To better understand the issues R & B raises, we first provide some background information on the nature and interrelationship of the various companies involved. FGI is a management and holding company. Truck Underwriters is a wholly owned subsidiary of FGI. Truck Underwriters is the attorney-in-fact of Truck Insurance, pursuant to the terms of a subscription agreement. Truck Insurance is a reciprocal or interinsurance exchange. R & B is a subscriber under the subscription agreement.

By way of further explanation, "reciprocal insurers, also known as interinsurance exchanges . . . are governed by [Insurance Code] section 1280 et seq. An interinsurance exchange is an unincorporated business organization made up of subscribers and managed by an attorney-in-fact. The exchange is the insurer and the subscribers are the insureds. The subscribers execute powers of attorney appointing the attorney-in-fact to act on their behalf. The attorney-in-fact executes the exchange's insurance contracts. [Citations.]" (*Tran v. Farmers Group, Inc.* (2002) 104 Cal.App.4th 1202, 1210 [128 Cal.Rptr.2d 728] (*Tran*).)

### (3) Fiduciary duty of Truck Underwriters

### (a) Duty to provide lemon law coverage

R & B, citing *Tran, supra,* 104 Cal.App.4th 1202, says the court erred in finding Truck Underwriters did not owe R & B a fiduciary duty. R & B insists that Truck Underwriters owed it a fiduciary duty to execute on its behalf only an insurance contract providing lemon law coverage for used car sales.

As R & B correctly notes, the *Tran* court stated that the reciprocal insurer's attorney-in-fact "acts as the insurer's managerial agent, deriving its authority from a power of attorney executed by the insured. [Citations.] We hold that the attorney-in-fact owes the insured a limited fiduciary duty under the power of attorney." (*Tran, supra,* 104 Cal.App.4th at p. 1206.) R & B argues that the facts of *Tran* closely parallel the facts of the case before us and that this compels the conclusion that Truck Underwriters did owe a fiduciary duty to it and therefore the judgment in favor of Truck Underwriters must be reversed. To answer that question, we take a closer look at *Tran*.

The plaintiff in *Tran, supra,* 104 Cal.App.4th 1202 purchased insurance coverage for her grocery store from an agent of Farmers Insurance Group. (*Id.* at p. 1207.) She did not immediately receive a copy of the policy. Her store was set afire by an arsonist and severely damaged. When she later received a copy of the policy, issued by Truck Insurance Exchange, it reflected a retroactive decrease in both her premium amount and her coverage limits. (*Id.* at pp. 1207–1208.) This had the effect of reducing the plaintiff's coverage to less than half of her actual losses. (*Id.* at p. 1208.)

The plaintiff sued Farmers Group, Inc., Truck Underwriters Association and Fire Insurance Exchange. (*Tran, supra,* 104 Cal.App.4th at p. 1206.) Truck Underwriters Association represented that it was the attorney-in-fact for Truck Insurance Exchange. (*Id.* at p. 1207, fn. 3.) The plaintiff's causes of action included breach of fiduciary duty. The defendants filed a demurrer to the cause of action and the trial court sustained the demurrer without leave to amend. (*Id.* at p. 1208.) The appellate court held the ruling was in error. (*Id.* at p. 1215.)

The court in *Tran, supra,* 104 Cal.App.4th 1202, stated: "Farmers Group or Truck Underwriters Association, or perhaps both, are her attorney-in-fact, and as such owe her a fiduciary duty in regard to the insurance contract or contracts they executed on her behalf. [Citations.]" (*Id.* at p. 1213.) The court further said: "We believe respondents, having chosen to conduct their insurance business through interinsurance exchanges that require the appointment of attorneys-in-fact to execute contracts on behalf of subscriber/insureds, are bound by the ordinary rule that an attorney-in-fact is an agent owing a fiduciary duty to the principal. [Citations.]" (*Ibid.*)

In the case before it, the court in *Tran, supra,* 104 Cal.App.4th 1202, observed that the record did not include a copy of the power of attorney executed by the plaintiff. However, the court stated that "by statute the instrument must include the authority to execute the insurance contract on [the plaintiff's] behalf. ([Ins. Code,] § 1305.)" (*Tran, supra,* 104 Cal.App.4th at p. 1214.) Inasmuch as the plaintiff had alleged that the defendants mishandled the execution of her insurance contract when they issued her less coverage than she had requested, the court held that she had sufficiently stated a cause of action for breach of fiduciary duty with respect to the execution of her insurance contract. (*Id.* at pp. 1214–1215.) The court stated: "We conclude that the facts stated by [the plaintiff] in her complaint support a cause of action . . . for breach of the fiduciary duty owed to the insured by the attorney-in-fact of a reciprocal insurer." (*Id.* at p. 1215.)

R & B contends that just as the plaintiff in *Tran, supra,* 104 Cal.App.4th 1202, received less insurance coverage than she had requested, it also had

received less coverage than it had requested. That is to say, R & B received a policy that lacked applicable lemon law coverage. R & B asserts that, because Truck Underwriters was the attorney-in-fact of the reciprocal insurer, Truck Insurance, Truck Underwriters owed R & B a fiduciary duty in connection with the execution of the insurance contract. What R & B overlooks is the extent of that fiduciary duty.

As the court in *Tran, supra,* 104 Cal.App.4th 1202 made clear, the fiduciary duty is a "limited" one. (*Id.* at p. 1206.) "The scope of an attorney-in-fact's fiduciary responsibilities depends in each case on the terms of the power of attorney and the nature of the functions performed by the attorney-in-fact on behalf of the insured." (*Id.* at p. 1215.) Accordingly, we must examine the power of attorney itself to determine the scope of the limited fiduciary responsibility.

The subscription agreement states in part that the subscriber "appoints [Truck Underwriters] to be attorney-in-fact for subscriber, granting to it power . . . to do all things which the subscriber . . . might or could do . . . with reference to all policies issued, . . . and all other acts incidental to the management of the Exchange . . . ." R & B emphasizes the broad authorization "to do all things" and to engage in "acts incidental to the management of the Exchange."[18] However, R & B does not explain how this language limits the authority of Truck Underwriters, as attorney-in-fact, to execute on R & B's behalf, as subscriber, only an insurance contract containing lemon law coverage with respect to used car sales.

Nonetheless, we note that the insurance application, which is printed on the same page as the subscription agreement, contains the following language about the scope of the insurance coverage: "3. Insurance applied for is indicated by [x], a limit of insurance, or a premium entry on the reverse side. Coverages which may be so indicated and for which insurance is not applied for, or coverages which are in any way to be changed from the specifications appearing on the reverse side, are listed as follows: See Beth Lopez for revisions[.]" (Capitalization omitted.) At the bottom of the page,

---

[18] The subscription agreement states more fully: "[T]he Subscriber covenants and agrees with the Exchange and other subscribers thereto through their and each of their attorney-in-fact, the Truck Underwriters Association for the Truck Insurance Exchange . . . , to exchange with all other susbscribers' [*sic*] policies of insurance . . . containing such terms . . . therein as may be specified by said attorney-in-fact and approved by the Board of Governors or its Executive Committee for any loss insured against, and subscriber hereby designates . . . said Association to be attorney-in-fact for subscriber, granting to it power to substitute another in [its] place, and in subscriber's name . . . to do all things which the subscriber or subscribers *might or could do severally or jointly with reference to all policies issued, including* cancellation [thereof], collection and receipt of all monies due the Exchange . . . and disbursement of all loss and expense payments, . . . and all other acts incidental to the management of the Exchange . . . ."

appear the words: "I hereby declare the facts stated in the survey forms, from which the quotation on the reverse side was prepared, to be true and request the Exchange to issue the insurance described in said quotation subject to any exceptions noted in Item 3 above and subject further to all the terms and conditions of such insurance."

This is the language describing the scope of the authorization of the attorney-in-fact with respect to the issuance of R & B's requested policy. In order to know whether the attorney-in-fact breached that authorization, we would need to see the reverse side of the page and also know the meaning of the comment "See Beth Lopez for revisions." However, our record does not contain a copy of the reverse side of the page, upon which the particulars of the insurance were supposed to be addressed, and R & B provides us with no information on the meaning of the reference to the Beth Lopez revisions.

It is the appellant's burden to show error. Here, appellant, R & B, contends that the trial court, at the conclusion of a bench trial on the issue, erred in ruling that Truck Underwriters did not owe a fiduciary duty to R & B. R & B insists that, under the rule of *Tran, supra,* 104 Cal.App.4th 1202, Truck Underwriters owed it a fiduciary duty with respect to insurance contract execution. However, in this case, R & B has not demonstrated what the scope of that fiduciary duty would have been under the documents before us.

We must indulge all intendments and presumptions to support the judgment (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561 [20 Cal.Rptr.2d 132]), and we construe the ruling to mean that Truck Underwriters did not owe R & B a fiduciary duty that would have supported R & B's cause of action. In other words, we construe the trial court's ruling as meaning only that any limited fiduciary duty that Truck Underwriters owed under *Tran, supra,* 104 Cal.App.4th 1202 did not require Truck Underwriters to issue a policy providing lemon law coverage for used car sales.[19] R & B has not shown us that this ruling is erroneous.

(b) *Duty with respect to claims handling*

As set forth *ante,* R & B argues that the subscription agreement imposes upon Truck Underwriters a fiduciary duty to execute on its behalf only an insurance contract providing lemon law coverage for used car sales. It is

---

[19] Because we hold that R & B did not show that any limited fiduciary duty Truck Underwriters may have owed under *Tran, supra,* 104 Cal.App.4th 1202, required Truck Underwriters to issue an insurance policy providing lemon law coverage for used car sales, we need not address Truck Underwriters's argument that *Tran* was wrongly decided.

unclear to us whether R & B means to maintain, in addition, an argument that the subscription agreement also gives rise to a fiduciary duty with respect to claims handling.[20] While R & B framed the issue in its third amended complaint, it barely alludes to the issue on appeal.

R & B states in a footnote in its opening brief that "[t]he delegation of fiduciary responsibility from R & B to [Truck Underwriters] is clearly comprehensive. It includes not only the drafting[,] underwriting[,] and issuance of insurance policies, but also all aspects of claims [handling]. [Citations.]" With little discussion, it cites *Delos v. Farmers Group, Inc.* (1979) 93 Cal.App.3d 642 [155 Cal.Rptr. 843] in support of this assertion. The court in *Delos*, in addressing whether an attorney-in-fact for a reciprocal insurance exchange could be held liable for breach of the implied covenant of good faith and fair dealing, provided some general discussion of the nature of reciprocal insurance exchanges. It stated that an attorney-in-fact for a reciprocal insurance exchange was generally empowered by agreement to exercise all functions of an insurer, including the establishment of rates, settlement of losses, compromise of claims and cancellation of contracts. (*Id.* at p. 652.)

More specific language regarding an attorney-in-fact's possible fiduciary duty with respect to claims handling can be found in *Tran, supra,* 104 Cal.App.4th 1202. As noted previously, the first amended complaint in *Tran* contained a cause of action for breach of fiduciary duty. The trial court sustained without leave to amend the attorney-in-fact's demurrer to that cause of action. (*Id.* at p. 1208.) The appellate court reversed. (*Id.* at pp. 1207, 1220.) First, the court pointed out that the record on appeal did not contain a copy of the power of attorney at issue, and emphasized that the fiduciary duty of the attorney-in-fact could "extend no further than the terms of the power of attorney . . . ." (*Id.* at pp. 1214–1215.) The court stated: "Whether respondent's fiduciary obligations also extend to the adjustment of [appellant's] claim is yet to be determined. . . . For purposes of the demurrer, [appellant] has sufficiently stated a cause of action for breach of fiduciary duty in regard to the execution of her policy. Respondents' fiduciary duty would extend to claims processing only if they assumed some responsibility for [appellant's] claim under the power of attorney executed by her." (*Id.* at p. 1215, citation

---

[20] We will address the issue as, and to the extent, it is framed in the briefing on appeal. However, we note that the parties do not raise the issue of whether, even assuming a fiduciary duty with respect to claims handling exists, a cause of action for breach of that fiduciary duty may be maintained when there is no potential for coverage under the policy. In other words, they do not address whether the rule of *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th 1, to the effect that no bad faith cause of action lies when there is no potential for coverage under the policy, should apply analogy to bar a cause of action for breach of fiduciary duty with respect to claims handling when there is no potential for coverage. We need not resolve the issue, however, inasmuch as we hold the trial court did not err in ruling that there was no fiduciary duty.

omitted.) The court concluded that the facts stated in the complaint were sufficient to support a cause of action for breach of fiduciary duty. (*Ibid.*)

Thus, *Tran, supra,* 104 Cal.App.4th 1202 provides support for the argument that an attorney-in-fact may be held liable for breach of fiduciary duty with respect to claims handling, depending on the terms of the power of attorney as contained in the subscription agreement. However, R & B does not address the portion of *Tran* dealing with the possibility of a fiduciary duty with respect to claims handling. Rather, R & B, on the same page of its opening brief as the footnote, mentions the broad language of the subscription agreement concerning the attorney-in-fact's power "to do all things" with respect to the policies that the subscriber could do and to take "acts incidental to the management of the Exchange . . . ." We infer that R & B interprets this language as a commitment to provide claims handling services.

At the same time, however, we observe that R & B concedes that claims handling for Truck Insurance is performed by Farmers Insurance Exchange. R & B does not explain why Truck Underwriters should be held responsible for breach of a fiduciary duty with respect to claims handling performed by Farmers Insurance Exchange. This question becomes even more puzzling when taking into consideration the fact that R & B did not name Farmers Insurance Exchange as a defendant in its third amended complaint. It is, perhaps, for these reasons that R & B does not pursue with vigor any argument concerning Truck Underwriters's fiduciary duty with respect to claims handling. On the particular facts and arguments presented, we decline to extend *Tran, supra,* 104 Cal.App.4th 1202 to conclude that the attorney-in-fact in the case before us owed the subscriber a fiduciary duty with respect to claims handling.

### (4) *Fiduciary duty of FGI*

Although R & B appointed Truck Underwriters, not FGI, as its attorney-in-fact under the subscription agreement, R & B seeks to have FGI construed as a "de facto attorney-in-fact" owing to a fiduciary duty to R & B. R & B complains that "there was no substantial evidence to support the trial court's finding that FGI is not the de facto attorney in fact." (Capitalization and italics omitted.)

R & B misinterprets the court's findings. Contrary to R & B's assertion, the judgment contains no finding on "de facto attorney-in-fact" status. Rather, the judgment simply states "[t]hat defendant Farmers Group, Inc. did not owe plaintiff a fiduciary duty pursuant to the subscription agreement executed by plaintiff." (Capitalization omitted.) As indicated previously, we interpret the language of the judgment to mean that the court found FGI did not owe

R & B any fiduciary duty that would support the cause of action R & B framed against FGI. (*In re Marriage of Zimmerman, supra,* 16 Cal.App.4th at p. 561 [appellate court indulges all intendments and presumptions to support the judgment].)

We observe that R & B does not discuss the basis of any fiduciary duty in support of its assertion of error. It focuses on other issues instead. R & B explains at length why it believes FGI is the "de facto attorney-in-fact" under the subscription agreement. However, we need not address its arguments on this point. Even assuming that FGI were the "de facto attorney-in-fact" under the subscription agreement, it would make no difference in the outcome. As we have already explained *ante,* the court did not err in ruling that the subscription agreement did not give rise to a fiduciary duty that would support R & B's cause of action. Thus, a cause of action for breach of fiduciary duty would not lie against FGI even if it were the "de facto attorney-in-fact."

(5) *Alter ego*

Similarly, even if FGI were found to be the alter ego of Truck Underwriters, no cause of action against FGI would lie for breach of fiduciary duty, because the trial court correctly ruled that Truck Underwriters owed no fiduciary duty that would support R & B's breach of fiduciary duty cause of action. Therefore, whether the court correctly ruled that FGI was not the alter ego of Truck Underwriters is moot.

I. *Miscellaneous Motions in Limine:*

(1) *Introduction*

In addition to the orders on the motions in limine previously discussed, R & B challenges several additional orders granting other motions in limine. As we have noted already, Truck Insurance concedes that if this court determines that the trial court erred in dismissing the various causes of action, the trial court will need to reconsider its evidentiary rulings on remand. Neither FGI nor Truck Underwriters makes any contrary contention. We have indeed determined that the trial court erred in dismissing several causes of action. Consequently, the trial court will need to readdress the pertinent motions in limine.

(2) *Insurance Code provisions*

In its motion in limine No. 13, Truck Insurance requested "an order excluding evidence of, reference to, and/or questions regarding" Insurance

Code section 790 et seq. Truck Insurance argued that Insurance Code section 790.03 did not create a private cause of action for bad faith and that the mere suggestion that Truck Insurance might have violated a provision of the Insurance Code would cause the jury to lose its objectivity. FGI and Truck Underwriters filed a similar motion, their motion in limine No. 6, pertaining to violations of Insurance Code section 790.03.

R & B opposed the motions, stating they were overbroad. It asserted that failure to comply with statutory requirements showed unfair claims practices and bad faith, and was relevant to show waiver and estoppel as well. The court granted both motions.

As we have discussed already, the court properly dismissed the bad faith cause of action and properly denied R & B's motions for leave to amend to allege waiver and estoppel. The court did not err in excluding evidence that would support those theories alone. However, we agree that the orders may have been overbroad nonetheless.

As we have said previously, the court erred in dismissing the unfair competition cause of action. To the extent that the orders on the motions in limine may preclude R & B from introducing evidence relevant to the unfair competition cause of action, the orders are overbroad. The court is directed to withdraw its orders and reevaluate the motions in light of the parameters expressed herein. The rulings on the motions in limine must be closely tailored to address the moving parties' concerns without completely preventing R & B from putting on its case. The court may invite the parties to submit limiting instructions to address the parties' competing concerns.

(3) *Evidence of claims handling*

Truck Insurance made an oral motion in limine to exclude any evidence of claims handling, and the court granted the motion. R & B says that the court erred in so doing. R & B contends that the claims handling evidence is relevant to establishing the contract, bad faith, unfair competition claims and intentional misrepresentation claims. It further states that the "evidence is also relevant to show fraud, ratification, pattern and practice, willfulness, oppression and malice required to recover punitive damages under Cal. Civ. Code § 3294 in connection with" the intentional misrepresentation and breach of fiduciary duty causes of action.

As we have stated already, the court properly dismissed the breach of contract, bad faith and breach of fiduciary duty causes of action. However, the court erred in dismissing the unfair competition and misrepresentation causes of action. To the extent that, on remand, R & B can show that certain

evidence of claims handling is relevant to those remaining causes of action, the court must withdraw its order and issue a new order tailored to the situation. Again, the ruling on the motion in limine must be carefully crafted so as to address the moving parties' concerns without completely preventing R & B from putting on its case. The court may invite the parties to submit limiting instructions to address the parties' competing concerns.

(4) *Suits against exchange unit*

In its motion in limine No. 20, Truck Insurance sought an order precluding R & B from making reference to the suits against exchange unit. As Christopher Pflug, an officer of and corporate counsel for FGI, explained at his deposition, bad faith litigation for Truck Insurance, Farmers Insurance Exchange and certain other Farmers entities was supervised by the suits against exchange unit. The unit was staffed by Farmers Insurance Exchange employees.

Truck Insurance argued that any evidence pertaining to the suits against exchange unit would be highly prejudicial and irrelevant. In its opposition to the motion, R & B asserted that the motion was overbroad. The court granted the motion.

On remand, to the extent that R & B can demonstrate that evidence regarding the suits against exchange unit is relevant to any of the remaining issues in the litigation, the trial court shall reevaluate the competing interests of the parties in determining whether and to what extent to permit R & B to present the evidence in question.

## III

## DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings consistent with the views expressed herein. R & B shall recover its costs on appeal.

Rylaarsdam, Acting P. J., concurred.

**RYLAARSDAM, Acting P. J.,** Concurring.—I have signed the main opinion as I believe it to be the correct resolution of this procedurally mismanaged case. But I write separately to address some of the issues raised in the dissenting opinion. I respectfully disagree with many of the statements made and the conclusions reached by our dissenting colleague.

This case, which is rather simple, has turned into an ungainly monster. The primary issues of fact are whether defendant's agent negligently or intentionally misrepresented the scope of the insurance coverage provided to plaintiff and whether defendants engaged in a scheme to defraud used car dealers. The other significant issue, a mixed question of law and fact, is whether defendants are liable for the conduct of their agents under the doctrine of respondeat superior.

The complexity into which this essentially simple case was transmogrified results primarily from three circumstances. First, plaintiff managed to throw every conceivable cause of action against the wall hoping that something might stick. Second, defendants successfully litigated the issues largely through motions in limine, a useful procedural tool but one that may not be used to resolve factual issues. Confusion between which arguments were directed at which of the many motions in limine and a conflation of these arguments in the trial court and in the parties' briefs here did not lighten our burden in analyzing each motion and helps to explain the trial court's rulings. Finally, by arguing issues pertaining to sufficiency of the evidence, issues not urged by the parties in their briefs, our dissenting colleague has made it necessary to discuss a great deal of evidence that would otherwise be superfluous.

## 1. *Improper Use of Motions in Limine*

Because of the increasingly improper use of motions in limine, a few words on that subject. I realize that it is not uncommon to bring motions for judgment on the pleadings, for summary judgment, and for summary adjudication of issues in the guise of motions in limine. But, particularly in the latter cases, this practice removes all the protections afforded by the statute which prescribes the manner in which the court must handle such motions. To have the sufficiency of the pleading or the existence of triable issues of material fact decided in the guise of a motion in limine is a perversion of the process. And to hold, as our dissenting colleague argues, that, based purely on the name given the motion, the court should not consider evidence presented in connection with the previously denied motion for summary judgment is to endorse an unjust result.

Motions in limine are properly used to determine whether specific evidence should be admitted or precluded. " 'The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. . . . Motions in limine serve other purposes as well. They permit more careful consideration of evidentiary issues than

would take place in the heat of battle during trial. They minimize side-bar conferences and disruptions during trial, allowing for an uninterrupted flow of evidence.' " (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669–670 [56 Cal.Rptr.2d 803], citations & italics omitted.)

But motions in limine deal with *evidence*. May this particular document be admitted? May an expert witness testify to certain facts or conclusions? An in limine motion that seeks to exclude all evidence pertaining to part or all of a cause of action based on an argument that plaintiff lacks evidence to support part or all of the cause of action is but a disguised motion for summary adjudication. For example, the court granted defendant Truck Insurance Exchange's "motion in limine to preclude plaintiff from introducing evidence of waiver or estoppel" (capitalization omitted) and the same defendant's "motion in limine to preclude plaintiff from arguing that Truck Insurance Exchange breached the subject policy of insurance and/or acted in bad faith." (Capitalization omitted.) In granting these motions the court summarily adjudicated these issues, and, in doing so, reconsidered the earlier denial of the same motions.

As another example, one of defendant Truck Insurance Exchange's motions in limine asked the court "to bind plaintiff to the parameters of its pleadings." (Capitalization omitted.) On its face a meaningless motion because it asked the court not to admit irrelevant evidence, something the court presumably would not do in any event. But this motion was used to dispose of a specific issue raised by plaintiff, in effect, a motion for summary adjudication of issues. This motion would be of the same ilk as one asking the court not to admit hearsay evidence without identifying the specific evidence sought to be excluded. A final example: In its first motion in limine, defendant Truck Insurance Exchange argues that, "if plaintiffs cannot demonstrate that Truck [Insurance Exchange] breached the terms of the subject policy, it cannot prevail on either its first [or second] cause[s] of action." (Capitalization omitted.) Clearly, this request constituted a motion for summary adjudication, not one relating to the admission of evidence.

2. *Use of Earlier Evidence Filed in Opposition to Motion for Summary Judgment*

I agree with our dissenting colleague that normally evidence filed in opposition to a previously denied motion for summary judgment or summary adjudication would not be before the court when ruling on pretrial motions. But our colleague misinterprets our consideration of the summary judgment evidence. We are not suggesting the court should at all times be aware of the contents of the court files. But here the critical so-called motions in limine were, in effect, motions for summary adjudication, without being formally

supported by the kind of evidence such motions require, and were based on the same arguments supporting the previously denied motions. More accurately, they were motions to reconsider the previously denied motions for summary adjudication. And defendant Truck Insurance Exchange acknowledges this fact in its brief: "The trial court's hands were not tied by its prior summary judgment ruling. . . . Thus, the trial court had the power to reconsider its prior summary judgment ruling even if no new evidence was presented." Further, the name of the motion is not controlling. The requirements for a motion for reconsideration "apply to any motion that asks the judge to decide the *same matter* previously ruled on." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 9:324.1, p. 9(I)-103.)

Even if we accept the notion expressed by defendant Truck Insurance Exchange that the court could reconsider the earlier ruling on the summary adjudication motion without requiring *new* evidence, we must conclude that the evidence submitted in opposition to the earlier motion should have been considered. Therefore, it was appropriate for us to consider this evidence in evaluating the trial court's rulings.

### 3. *Jury Trial for Issues of Damages and Reliance*

Our dissenting colleague states in a number of contexts that plaintiff did not sustain damages beyond the amount tendered by defendant Truck Insurance Exchange. I believe we explain adequately why this issue was not waived. Our colleague questions whether evidence of such damages can exist. But it is not for us to speculate on this or any other issue. It is irrelevant that we may deem it unlikely that plaintiff may be able to establish damages in addition to the cost of defending and settling the underlying lawsuit. Whether or not such damages were sustained is another question of fact that should not have been resolved in a motion.

Our dissenting colleague also states that "[n]o reasonable trier of fact could ever have concluded Truck Insurance [Exchange] would provide lemon law coverage for used cars for $25 a year." But we are not the triers of fact. And what may seem unreasonable to us may not appear so to the average jury. I could make the same statement with respect to new car dealers. The coverage seems extremely cheap. And the fact that, as a new or used car dealer, I would question whether I had actually received the promised coverage for this small price, does not allow me to substitute my own judgment for that of the jury. Defendants may well argue that the price of the coverage precluded reasonable reliance on defendants' promises. But this argument should be directed to a jury and not to the court.

**FYBEL, J.,** Concurring and Dissenting.—I concur in the majority's affirmance of the trial court's decisions in favor of defendants on the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. I respectfully dissent from the remainder of the majority opinion. Thus, the majority and I agree the contract between these two businesses provided insurance coverage for new cars, not used cars. We also agree that the insurer is not liable for any violation of the implied covenant or for breach of fiduciary duty. We part company because I believe the trial court's other decisions were also correct and supported by the evidentiary record and the law.

The majority violates one of the fundamental general rules of appellate review—on appeal, in considering whether the trial court erred, the appellate court cannot consider evidence that was not before the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491].) In support of the conclusion that the trial court could not grant the nonsuit on the misrepresentation claims of R & B Auto Center, Inc. (R & B), the majority cites extensively from, and relies exclusively on, the deposition testimony and declarations from R & B's business manager and president, and the deposition testimony and transcribed recorded statement of William Westenberger, an insurance agent for Truck Insurance Exchange (Truck Insurance). The fatal problem with the majority's analysis is that *all* of the evidence on which it relies was presented to the trial court in connection with the parties' earlier motions for summary judgment filed in May 2002, not in connection with the motions for nonsuit months later in March 2003. The only justification the majority gives for this unprecedented consideration of evidence outside the trial record is to say the circumstances of this case are "peculiar." (Maj. opn., *ante*, at p. 341, fn. 6.)

What evidence did the trial court have to consider in ruling on the motions for nonsuit? When the motions for nonsuit were filed, R & B did not offer *any* evidence in opposition, and did not request an opportunity to file an offer of proof. (The only offer of proof referred to in the majority opinion was submitted by R & B in connection with its attempt to get the trial court to revisit its rulings on the motions in limine. It was not an offer of proof on the later nonsuit motions.) In responding to the nonsuit motion filed by Farmers Group, Inc. (Farmers), and Truck Underwriters Association (Truck Underwriters), R & B's counsel said, "we oppose this motion. . . . We preserve all objections. We say that everything that we've offered and argued to your honor, and your honor has reviewed at tremendous length—and we appreciate that—in the past, we think we're right on the issues that we've been ruled wrong on, but we understand that. And in the interest of judicial economy, we're prepared to sign off on this order as a matter of form, preserving all rights to object." In opposing the separate nonsuit motion filed

by Truck Insurance, R & B's attorney said, "[w]e oppose the motion on all the reasons and incorporate everything we ever filed in this case, if that's okay."

The trial court granted the motions for nonsuit. The court did not state it agreed to consider all of R & B's evidence and argument throughout the case when ruling on the motions for nonsuit. Certainly, a party cannot refer generally to every document previously filed in the trial court record over months or even years, without any specification, and satisfy its obligations in opposing a motion for nonsuit in the trial court. In effect, the majority says that the trial court abused its discretion by limiting its review to the evidence and actual motions before the court in trial.

The majority holds that a party opposing a motion for nonsuit may incorporate by reference all prior filings in the case, and that it is reversible error for the trial court to decide the case on the evidence before it, rather than dig back through the record to locate evidence unspecified by the party. The majority's holding is breathtaking in its novelty, and it will be devastating to the daily operation of our trial courts and to the normal processes of appellate review. As an appellate court, we cannot reverse a correct trial court decision, based on evidence that was not before the trial court when it made its decision.

As a second, independent reason showing erroneous analysis by the majority, the issues on which the majority bases its conclusions in connection with the misrepresentation claims are not properly before us because R & B has waived them on appeal under basic rules of appellate review. In its opening appellate brief, R & B never addresses the motion for nonsuit filed by Farmers and Truck Underwriters. Any arguments with regard to that issue should be deemed to be waived. (*Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211, 1216, fn. 4 [112 Cal.Rptr.2d 556].) With respect to Truck Insurance's motion for nonsuit, the issue argued to the trial court was R & B's lack of any damages. In its opening appellate brief, R & B does not address the issue of damages (much less any issue regarding the existence or nonexistence of a misrepresentation). When the majority addresses whether R & B waived issues on appeal, it addresses the wrong issue—whether R & B waived its rights by stipulating to the granting of the nonsuit motions, and by failing to offer evidence to counter those motions. Yes, these are serious problems for R & B on appeal, but not as serious a problem as its failure to challenge damages on appeal—a failure which I believe forecloses R & B from raising a challenge to the nonsuit on appeal.

Thus, R & B failed to address the specific issue on which the motion for nonsuit had been based and was decided, namely, the absence of damages. Truck Insurance argued in its respondent's appellate brief that R & B could

not recover damages, and its misrepresentation claims were therefore properly dismissed. Even in its reply brief, R & B makes no attempt to point to any evidence of actual, compensatory damages. R & B has repeatedly waived the issue of damages for misrepresentation on appeal, and the issue is not properly before this court.

The majority broadly criticizes the trial court for its rulings on motions in limine. Yet, there are really two key motions in limine in issue, the trial court was right on both, and the majority agrees with the ruling on one of the two. First, the trial court decided one motion in limine on the ground the insurance contract did not provide coverage for new cars. The majority agrees with this ruling. Second, the trial court granted a motion in limine excluding the testimony of three nonparty witnesses who were not identified by R & B in discovery. This ruling was well within the trial court's discretion, based on the record before it.

*Procedural History*

I set forth here a short summary of the procedural history of this case and highlight those issues on which I agree with the majority, while making it clear where we disagree. First, the trial court granted a motion in limine in which it concluded, as a matter of law, the insurance policy did not provide coverage for R & B's claim, and therefore dismissed R & B's coverage-related claims. The majority agrees the issue of interpretation of the contract was a legal one and the motion was properly granted with respect to two of the claims—for breach of contract and breach of the implied covenant.[1] I agree with the majority's conclusion in this regard. I disagree, however, with the conclusion that the trial court improperly resolved the unfair competition claim, as detailed *post*. The trial court also granted several other motions in limine. In dicta, the majority reverses these rulings using an incorrect standard of review.

Next, the trial court conducted a bench trial on the existence of a fiduciary duty and on the issue of alter ego. At the conclusion of trial, the court found

---

[1] R & B purchased a package of coverages written by Truck Insurance. The package contained a products deficiency liability endorsement. The endorsement provided coverage only for lemon law claims arising out of the sale of a new car. "Subject to the Limits of Liability shown above, we will pay: [¶] a. all legal fees and expenses; [¶] b. the satisfaction of all judgments; and [¶] c. the repair or replacement cost of any 'new motor vehicle' [¶] which the 'insured' becomes legally obligated to pay as damages because of a 'suit' alleging the 'insured's' inability to service or repair a 'nonconformity' in a 'new motor vehicle' to conform to applicable express warranties as prescribed by the laws of the state in which the 'insured' conducts operations." The policy endorsement defined "new motor vehicle" as "a new untitled motor vehicle recently purchased for use and primarily used for personal, family or household purposes. A 'new motor vehicle' does not include . . . any type of resale vehicle."

there was no fiduciary duty owed to R & B, and the majority concludes there was substantial evidence to support the trial court's finding on fiduciary duty. I agree with the majority on this point. The majority then concludes it is moot whether the trial court correctly ruled that Farmers was not the alter ego of Truck Underwriters. I understand the majority's opinion on this issue to finally dispose of the alter ego issue in favor of Farmers and Truck Underwriters. I would expressly state there was substantial evidence to support the trial court's finding that none of the parties was the alter ego of the others.

It was at this point in the proceedings that Farmers and Truck Underwriters, and Truck Insurance separately moved for nonsuit on the remaining claims of negligent and intentional misrepresentation and reformation. I agree with the majority's conclusion that the trial court properly granted Truck Underwriters's motion, but the majority's conclusion that the trial court erred by granting the motions for nonsuit by Farmers and Truck Insurance is wrong, as described *post.*

*R & B Waived Any Challenge to the Order Granting Farmers and Truck Underwriters's Motion for Nonsuit.*

In the trial court, two motions for nonsuit were filed. In the first, Farmers and Truck Underwriters sought nonsuit on the remaining causes of action against them. The court granted that motion. In its appellate briefs, R & B never argues the trial court erred in granting Farmers and Truck Underwriters's motion for nonsuit. This issue should have been deemed to be waived. (*Katelaris v. County of Orange, supra,* 92 Cal.App.4th 1211, 1216, fn. 4.) Nevertheless, the following discussion would apply equally to Farmers and Truck Underwriters's motion. (As noted *ante,* this is not the same waiver issue addressed in the majority's opinion, *ante,* at pp. 337–341.)

*Truck Insurance's Motion for Nonsuit on the Misrepresentation Claims Was Properly Granted.*

The motion for nonsuit on the misrepresentation claims was properly granted. The elements of a claim for intentional misrepresentation are a misrepresentation, made with knowledge of its falsity and with an intent to defraud or induce reliance, justifiable reliance, and resulting damage. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 772, p. 1121.) A claim for negligent misrepresentation requires proof of each of the foregoing elements except for knowledge of the falsity of the representation; honest belief in the truth of the statement, without a reasonable ground for that belief, is sufficient. (*Id.,* § 818, p. 1181.)

The absence of any one of these elements warranted granting the nonsuit motion. The trial court correctly concluded R & B suffered no damages and

based its decision on that ground. In addition to the absence of damages, the nonsuit motion could have been granted as to each and all of the other elements as well.

R & B could not have proved a claim for intentional or negligent misrepresentation because it suffered no damages. R & B was limited to recovering economic damages. (*Templeton Feed & Grain v. Ralston Purina Co.* (1968) 69 Cal.2d 461, 468 [72 Cal.Rptr. 344, 446 P.2d 152].) The only economic damages R & B could have suffered as a result of the alleged misrepresentations by Westenberger and Lopez (a Farmers field underwriter) were the costs and expenses in defending against and settling the lemon law lawsuit filed against R & B which spawned the present case. Truck Insurance tendered payment to R & B for all its litigation expenses and settlement costs incurred in the Peralta litigation. Therefore, R & B suffered no loss.[2]

R & B admitted it suffered no damages on multiple occasions throughout the litigation and waived the issue on appeal. In its opening brief on appeal, R & B acknowledges, as it did in asking the trial court to reconsider its ruling on the motions in limine: "Approximately 611 days after R&B's initial tender of defense, Farmers unilaterally 'tendered' to R&B two checks totaling $77,27[5].98. The amount represented 100% of the defense costs and settlement amount incurred by R&B, with 10% interest, in connection with the underlying *Peralta* matter. . . . [¶] When Farmers eventually sent the check on April 3, 2002, it did so completely of its own accord. There had been no request or negotiations leading up to its tender. The amount sent did not purport to be a 'compromised' amount, but rather was the full amount of R&B's initial claim, with interest." R & B also acknowledges on appeal that Truck Insurance moved for nonsuit "on the grounds the pleadings established that Truck had tendered damages which equaled the damages on the *Peralta*

---

[2] R & B's attorney fees incurred in its lawsuit against Truck Insurance were not recoverable as an element of its damages. When an insured sues its insurer for breach of the duty of good faith and fair dealing to secure policy benefits unreasonably withheld by the insurer, the insured can recover its attorney fees. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796].) "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain *the benefits due under a policy*, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort." (*Ibid.,* italics added.)

Even if the holding of *Brandt v. Superior Court* could be extended to a claim for misrepresentation, *Brandt* applies only where the insured must sue to obtain policy benefits. Here, the trial court properly concluded there were no policy benefits to be withheld—unreasonably or otherwise—because there was no coverage for the Peralta litigation under the written insurance policy.

matter, the attorneys fees paid to Peralta's lawyers and to R&B's lawyers on the *Peralta* matter and 10 percent interest to date of the tender."[3]

R & B waived the right to argue on appeal it suffered any damages as a result of defendants' alleged misrepresentations. The issue before the trial court on Truck Insurance's motion for nonsuit was R & B's lack of any damages. In its opening appellate brief, R & B does not address the issue of damages. Instead, R & B argues the totality of the trial court's earlier rulings on the contract claims, the fiduciary duty claim, the unfair competition claim, and the motions in limine was "a series of prejudicial errors" and that once those prior rulings were reversed, the "Trial Court's decision on the intentional and negligent misrepresentation [would] fall as well." Truck Insurance argues in its respondent's appellate brief that R & B could not recover damages, and its misrepresentation claims were therefore properly dismissed. In its reply brief, R & B does not identify any evidence of actual, compensatory damages. On appeal, R & B has repeatedly waived the issue of damages for misrepresentation, and the issue is not properly before this court.

So the law tells us what the outer limits of R & B's recovery are, and R & B *admits* on appeal that Truck Insurance had tendered the full amount of its potential damages. This should be the end of it. How does the majority address the issue? It says R & B did not really make any concession that Truck Insurance tendered the total potential damages. (Maj. opn., *ante*, at pp. 342–343.) The majority then concludes with the following: "Erring on the side of caution, and with the goal of giving the litigants a full and fair trial on the merits, we remand the negligent misrepresentation issues to the trial court for further proceedings to the extent that R & B has not conceded that all potential damages under the negligent misrepresentation cause of action have been tendered." (*Id.* at p. 343.) The majority fails, however, to address the fact, given the *evidence* before the trial court, R & B could not prove damages, a necessary element of its intentional and negligent misrepresentation claims.

There was also no evidence before the trial court on the motions for nonsuit of a misrepresentation that the products deficiency liability endorsement for new cars would cover used cars. Without such a representation, R & B's case fails, as the trial court correctly understood. The evidence cited by the majority was taken entirely from the parties' submissions in connection with motions for summary judgment filed months earlier. The majority does not cite any evidence presented to the trial court in connection with the motions for nonsuit, because there was none.

---

[3] R & B's acknowledgement that it could not prove any damages is further highlighted by its appellate reply brief, in which R & B argues its prayer for punitive damages was not dependent on any showing of compensatory damages.

In response to a motion for nonsuit, the plaintiff normally makes an offer of proof. In this case, R & B did not do so. "The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1124 [118 Cal.Rptr.2d 873].) A plaintiff attempting to defeat a motion for nonsuit through the use of an offer of proof bears the burden of adequately specifying the additional proof to be offered. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2005) ¶ 12:236, p. 12-46 (rev. # 1, 2001).) The failure to do so properly results in the granting of the motion. "In the absence of a more precise offer of proof, however, we are in no position to arrive at conclusions about these subjects favorable to [the plaintiff], who must bear the consequences of all defects and ambiguities in its offer." (*S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 540 [30 Cal.Rptr.2d 286].)

On appeal, the plaintiff must show how the evidence in the offer of proof would have remedied the defects in the cause of action. (*Abreu v. Svenhard's Swedish Bakery* (1989) 208 Cal.App.3d 1446, 1457 [257 Cal.Rptr. 26]; *Cacciaguidi v. Elliott* (1974) 39 Cal.App.3d 261, 265–266 [114 Cal.Rptr. 93]; *Greene v. Atchison, T. & S. F. Ry. Co.* (1953) 120 Cal.App.2d 135, 144 [260 P.2d 834].) If the plaintiff does not or cannot, the appellate court is not in a position to reverse the trial court's order granting the motion for nonsuit. To simply incorporate by reference all material in the case file and all arguments previously made by counsel in opposing a nonsuit motion does not satisfy the requirements of an offer of proof. This procedure deprives the moving party of due process, and puts both the trial court and the appellate court in impossible positions. As a Court of Appeal, we should not resurrect such causes of action based on evidence that was not before the trial court in connection with the motion in question.[4]

Also, there was no evidence of knowledge of falsity, or of intent on the intentional misrepresentation claim. R & B admitted Westenberger and Lopez were unaware the products deficiency liability coverage only applied to new cars when they confirmed R & B would have lemon law coverage. True, parties may, throughout litigation, plead alternative causes of action, and R & B's evidence supporting its claim for reformation based on mistake does not necessarily preclude the existence of evidence of knowledge of a falsity. But R & B did not provide the trial court with evidence that Westenberger and Lopez knew any of their statements regarding R & B's products

---

[4] In arguing its own motion to permit evidence of claims handling, R & B incorporated the offer of proof it submitted when it asked the trial court to reconsider its rulings on the motions in limine. Even if this were a part of R & B's opposition to the motion for nonsuit, it would not meet the requirements of a specific offer of proof setting forth the evidence to be argued, as discussed *ante*.

deficiency liability coverage were false. Proof on this material point is not in the trial brief, the offer of proof, the reporter's transcript, or anywhere else. Even the unsupported statements from the trial brief, quoted by the majority, do not show Westenberger's and Lopez's knowledge of any falsity of their statements, of any such knowledge on the part of Truck Insurance, or of any intent to defraud R & B.

The majority relies primarily on *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442 [92 Cal.Rptr.2d 521], to support its conclusion that R & B should have had the opportunity to present its misrepresentation and reformation claims to a jury. (Maj. opn., *ante*, at pp. 336–337.) But *Butcher* does not support the majority. The key to the appellate court's holding in *Butcher* is "[t]he cases cited and discussed above demonstrate that, *if the facts relating to the purchase of the Truck policy are shown to be as related by [the insured]*, the trier of fact could find the insureds were misled by [the agent]'s negligent failure to warn that personal injury was not among the coverages of the policy." (*Butcher v. Truck Ins. Exchange, supra,* 77 Cal.App.4th at p. 1463, italics added.) When, as here, the plaintiff does not offer any facts or evidence to the court, *Butcher* does not help R & B.

In the real world, products deficiency liability coverage does not exist for used cars. No reasonable trier of fact could ever have concluded Truck Insurance would provide lemon law coverage for used cars for $25 a year or R & B could reasonably rely on a statement, much less its own unexpressed, secret belief, that Truck Insurance would do so. Could a buyer of a used car obtain an extended warranty for $25? Of course not, and who would know that better than a car dealer?

The majority opinion states in effect that on remand, R & B may be entitled to recover punitive damages on the remaining claims. As set forth *ante*, I do not believe R & B is entitled to retry its case on remand at all, and certainly it cannot prove the elements of its claim for intentional misrepresentation, in connection with which punitive damages might theoretically be available.

*The Trial Court Properly Granted the Nonsuit Motion Regarding the Claim for Reformation.*

The majority asserts the trial court erred in granting Truck Insurance's nonsuit motion regarding R & B's reformation claim because (1) R & B did not have the opportunity to present evidence of damages for breach of a reformed contract, and (2) R & B did not have an opportunity to establish the elements of a reformation case. (Maj. opn., *ante*, at pp. 348–349.)

On the issue of the nonexistence of coverage, the majority agrees there was no miscarriage of justice when the trial court decided the issue through a

motion in limine, because the issue was one for the court to decide and its ultimate conclusion was correct. The same analysis ought to apply here. The issue of reformation was for the court, and the court's conclusion that the insurance contract could not be reformed was correct.

"The purpose of reformation is to make a written contract truly express the intention of the parties. This language refers to 'a single intention' entertained by both parties. [Citation.] 'Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral [citation].' [Citation.]" (*American Home Ins. Co. v. Travelers Indemnity Co.* (1981) 122 Cal.App.3d 951, 963 [175 Cal.Rptr. 826]; see 1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 276, pp. 306–307 ["Where the parties come to an agreement, but by mistake (or fraud) the written instrument does not *express* their agreement correctly, it may be *reformed* or revised on the application of the party aggrieved . . . . [¶] . . . [¶] Reformation to correct a mistake in reducing the *contract to writing* is clearly distinguishable from *rescission,* which is granted where the contract would not have been entered *into at all save for the mistake or fraud*"].) A written contract is presumed to express the parties' actual intention, and the party seeking reformation bears the burden by clear and convincing evidence to overcome that presumption. (*Nat. Auto. & Cas. Co. v. Ind. Acc. Com.* (1949) 34 Cal.2d 20, 25 [206 P.2d 841]; *Dictor v. David & Simon, Inc.* (2003) 106 Cal.App.4th 238, 253 [130 Cal.Rptr.2d 588].)

The remaining issue in this case is not whether the contract expressed the intentions of the parties; the majority and I agree the contract provides no coverage for new cars. Instead, the issue is whether the agents misinformed R & B regarding what was covered by the products deficiency liability endorsement. Given the nature of the claimed mistake, reformation was not an appropriate remedy here. "Representations of an agent due to ignorance of the terms of the policy or misunderstanding of the effect thereof do not warrant reformation to conform to the representations, where there was no intention of the agent to deliver a different contract from that contained in the usual policy form." (13A Appleman, Insurance Law and Practice (rev. ed. 1976) § 7609, pp. 323–324.) "To justify reformation the mistake must be in the drafting of the instrument and not in the making of the contract which it evidences." (*Id.*, § 7608, pp. 309–310.) R & B was given an opportunity to make an offer of proof and argue its case when the motions for nonsuit were heard. If R & B had any evidence relevant to the court's consideration of the reformation cause of action, that was the time to present it.

As Truck Insurance succinctly puts it in its respondent's brief, "[b]oiled down to its essence, R & B's appeal against Truck turns on the notion that,

while the policy as issued never provided coverage, a court *could* have equitably reformed it, and if that happened, Truck's initial denial of benefits *not* owed would retroactively be transformed into a bad faith denial of benefits owed under the subsequently reformed policy. This is not how bad faith law works. [¶] A bad faith claim must be based on unreasonable withholding of benefits owed under the contract between the parties. [Citation.] Logically, the reasonableness of the conduct must be measured against the contract in force at the time, not against the chance that a court may someday exercise its equitable discretion to reform the contract. If the elements of reformation are proved, the equitable remedies for that claim— not the contract-dependent tort remedies for bad faith—would be owed. And here, Truck long ago tendered an amount sufficient to cover any award under a theory of reformation based on negligence in the sale of the policy." The trial court got it right, and its ruling granting the nonsuit motion as to the reformation claim should be affirmed.

*Dismissal of the Unfair Competition Claim Should Be Affirmed.*

The majority concludes the trial court correctly determined there was no coverage under the insurance policy for the Peralta litigation as a matter of law, and therefore correctly dismissed the breach of contract and breach of the implied covenant claims.[5]

The trial court dismissed R & B's unfair competition claim along with the claims for breach of contract and breach of the implied covenant. Another of the fundamental rules of appellate review is that we affirm a judgment or order that is correct on any theory, even if the trial court's stated reasoning is incorrect. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329–330 [48 P. 117].)

As the parties agree in their supplemental briefs, and as the majority notes (maj. opn., *ante*, at pp. 359–361), following the enactment of Proposition 64, in order to proceed with a claim for unfair competition, R & B must show it "has suffered injury in fact and has lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204.) R & B's third amended complaint does not allege it suffered any damages as a result of the alleged

---

[5] The majority states that R & B did not claim Truck Insurance breached the terms of the insurance contract as written. R & B's third amended complaint (which is the operative complaint for this case) alleges: "The Peralta Complaint contains allegations of covered product deficiency. The policy provides defense and indemnity coverage for product deficiency. As a result FARMERS had, and has, a continuing duty to defend and indemnify R & B. Notwithstanding its duty to defend and indemnify, FARMERS has failed and refused to provide any coverage whatsoever." (In its complaint, R & B referred to Farmers, Truck Insurance, and Truck Underwriters collectively as FARMERS.)

unfair competition by Truck Insurance, Truck Underwriters, or Farmers; R & B sought a permanent injunction and disgorgement of profits on behalf of the general public. In its offer of proof asking the court to revisit its rulings on the motions in limine, R & B reiterated it had not lost any money due to the alleged unfair competition: "Plaintiff is not seeking a monetary recovery from Farmers on this claim, but only injunctive relief to prevent Farmers from continuing its current course of unfair and deceptive conduct." (Fn. omitted.)

R & B did not suffer any damages, and never sought recovery of damages, in connection with its claim for unfair competition. Therefore, R & B cannot assert such a claim, and the trial court's dismissal of that claim should be affirmed.

> *There Was Substantial Evidence Supporting the Trial Court's Finding, After a Bench Trial, That Farmers Was Not the Alter Ego of Truck Underwriters.*

The majority concludes it is moot whether the trial court correctly ruled that Farmers was not the alter ego of Truck Underwriters vis-à-vis the fiduciary duty claim, because the court correctly ruled that Truck Underwriters itself did not owe R & B a fiduciary duty. Following a bench trial, the court found Farmers was not the alter ego of Truck Underwriters. There is substantial evidence in the record supporting this finding, and I would directly reach the issue and affirm the trial court's decision.

### Motions in Limine

The majority concludes the trial court must revisit its rulings on several motions in limine because the majority opinion resurrects the claims for unfair competition and misrepresentation. No party disputes that a reversal of any substantive part of the court's judgment would require a reassessment of several of the motions in limine. The majority's discussion as to how the motions in limine ought to have been decided is dicta.

I specifically disagree with the majority's analysis of the trial court's ruling on Truck Insurance's motion in limine No. 14, which precluded the testimony of three witnesses who had not been disclosed in discovery. (Maj. opn., *ante*, at pp. 356–358.) R & B argues on appeal that these three witnesses were unknown to it when the discovery responses were served. The majority admits there is no evidence in the record to support this assertion, yet finds the trial court abused its discretion by not just assuming such evidence existed. The majority concludes, "[w]e do not see how a failure to disclose the names of witnesses who were unknown to R & B before the discovery cutoff date could constitute a misuse of the discovery process." (*Id.* at

p. 357, fn. 15.) Without any evidence in the record about R & B's knowledge, the majority has improperly injected itself into the trial court's discretionary decisionmaking province based only on a presumption that the evidence exists. Did the trial court abuse its discretion based on the record before it? No.

I also disagree with the majority's citation to *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 26–28 [61 Cal.Rptr.2d 518] (*Edwards*), as the appropriate standard of review for many of the motions in limine. The court's orders on motions in limine are reviewed for abuse of discretion (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1493 [21 Cal.Rptr.3d 36]), except where the grant of a motion in limine excludes all the evidence relevant to a particular claim and thereby disposes of an entire cause of action. In that situation, the appellate court should apply the standard applicable to a motion for nonsuit—whether the evidence presented by the plaintiff was insufficient to permit a jury to find in the plaintiff's favor. (*Edwards, supra,* 53 Cal.App.4th at p. 28.) In *Edwards*, the plaintiffs sued the defendants for fraud in connection with the defendants' procurement of release agreements from the plaintiffs. (*Id.* at p. 25.) The trial court granted a motion in limine to exclude all prelitigation communications by the defendants and their agents regarding the underlying claims and their resolution. (*Id.* at pp. 25–26.) That ruling prevented the plaintiffs from introducing the alleged fraudulent statements, gutting the plaintiffs' case. (*Id.* at p. 26.)

The rule of *Edwards* would apply here if the court had granted a motion in limine precluding R & B from offering evidence of Westenberger's and Lopez's statements. It did apply to the majority's analysis of the coverage issue, which was decided by a motion in limine. But it does not apply to the remainder of the motions in limine. They should be decided under the abuse of discretion standard.

### Costs Under California Rules of Court, Rule 27(a)

Finally, as a procedural matter, it is improper for the majority to award costs on appeal to R & B. On several key points, the majority correctly affirms the trial court's rulings against R & B, so in the interests of justice, all parties should bear their own costs on appeal.

### Response to Concurring Opinion

I wish to briefly, respectfully, respond to a few comments made by my concurring colleague. First, the concurrence complains about the granting of the very motions in limine that the majority says were properly granted because they raised *legal* issues (e.g., no coverage can be created by

waiver or estoppel (maj. opn., *ante*, at pp. 351–352); the insurance contract does not provide coverage (*id.* at pp. 349–351); because no coverage existed, there could be no breach of the implied covenant of good faith (*id.* at pp. 352–354)). Second, the concurrence complains that the issues raised by this dissenting opinion required the majority to deal with the evidence. R & B challenged the grant of a motion for nonsuit; the appropriate standard of review on appeal requires this court to examine the evidence. Third, the concurrence says I want to decide this case based on the "name" of the motion. This dissenting opinion never makes that argument. Instead, this dissenting opinion says that in ruling on a *motion for nonsuit*, the trial court is not required to consider evidence presented in connection with pretrial motions earlier in the case when *none* of that evidence is directed to the trial court's attention by offer of proof or otherwise at the time the nonsuit motion is under consideration. In my view, the trial court did not err by failing to consider evidence not before it.

On July 5, 2006, the opinion was modified to read as printed above.